ALBERT KELLEY, administrator,[1] vs. ROBIN ANN ROSSI.

Suffolk. May 7, 1985. — August 15, 1985.

Present: WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Negligence*, Medical malpractice. *Massachusetts Tort Claims Act. Practice, Civil,* Summary judgment. *Medical Malpractice,* Public employee. *Doctor,* Employment. *Hospital. Agency,* What constitutes, Independent contractor. *Words,* "Public employee."

Discussion of the principles governing the determination whether a doctor is a "public employee" for purposes of the Massachusetts Tort Claims Act. [661]

In an action based on a claim of negligent medical treatment, summary judgment in favor of the defendant physician was inappropriate, where materials before the judge showed a genuine factual issue as to whether the physician, during a one-month assignment to a nonmunicipal hospital as part of her residency at the Boston City Hospital, was a "public employee" for purposes of G. L. c. 258, § 2, a portion of the Massachusetts Tort Claims Act, and thus could not be held liable for her allegedly negligent treatment of a patient in the emergency room of the nonmunicipal hospital. [661-665]

CIVIL ACTION commenced in the Superior Court Department on June 20, 1983.

A motion for summary judgment was heard by *George W. Cashman,* J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Elizabeth Mulvey* for the plaintiff.

*Joseph W. Glannon* for the defendant.

*Peter C. Knight, D. Alice Olsen, & Kevin T. Creedon,* for Joseph P. Kennedy Memorial Hospital, amicus curiae, submitted a brief.

---

[1] Of the estate of Duane Kelley.

WILKINS, J. This tort action was commenced against the defendant doctor (doctor) and the Joseph P. Kennedy Memorial Hospital (hospital) based on a claim of negligent treatment of Duane Kelley in March, 1982. A judge sitting by designation in the Superior Court allowed the doctor's motion for summary judgment, and a separate judgment was entered in her favor. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). We granted the plaintiff's application for direct appellate review. The basic premise of the doctor's motion for summary judgment was that in March, 1982, she was employed by the city of Boston as a "house officer" at Boston City Hospital while she was on rotation to the Joseph P. Kennedy Memorial Hospital as part of her residency and that, as a public employee, she could not be held liable in this case, citing G. L. c. 258, § 2 (1984 ed.) (a portion of the Massachusetts Tort Claims Act).

The basic facts can be stated briefly, leaving until later a recitation of the facts principally bearing on the question whether there was a dispute as to any material fact which would bar allowance of a motion for summary judgment. On March 22, 1982, the doctor, then in her second year of residency, was on duty in the emergency room of the hospital when the parents of Duane Kelley brought him there. The plaintiff claims that the doctor and the hospital were negligent in failing promptly to diagnose the boy's condition and to advise his parents of it. It is alleged that Duane died of the condition that had not been properly diagnosed.

At this time the doctor was a resident in Boston City Hospital's pediatrics residency program operated by the Boston University School of Medicine. As part of that residency program, residents "rotate" to other hospitals according to a schedule established at the Boston City Hospital. Part of the doctor's obligations as a rotating resident at the Kennedy Memorial Hospital was to staff the emergency room every third or fourth night during her one-month assignment to the hospital. That is what she was doing on March 22, 1982, when Duane Kelley was brought to the hospital's emergency room.

Our task on appeal is to determine whether, on the material properly before the judge on the motion for summary judgment,

there was no genuine issue of material fact as to the doctor's claim that she was an employee of the city of Boston or one of its agencies. See *Cassesso* v. *Commissioner of Correction,* 390 Mass. 419, 422 (1983); *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 553 (1976). We must view the material presented in the light most favorable to the plaintiff, the party against whom summary judgment was entered. See *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982). If on that assessment we conclude, as we do, that there was a dispute of material fact shown by the summary judgment material, summary judgment was improperly allowed.

The legal principles that govern the determination whether the doctor was a "public employee" of the city and, therefore, freed from liability to the plaintiff by G. L. c. 258, § 2, are the same as those that have determined whether an agent is a servant for whose negligent acts a principal may be liable under the common law doctrine of respondeat superior. Although the Tort Claims Act's definition of the words "public employee" in § 1 provides no detailed guidance in deciding whether a person is a "public employee," the definition of "public employer" in § 1 does, as the parties appropriately note. That definition states that a city or any agency of a city is a public employer if it "exercises direction and control over the public employee." G. L. c. 258, § 1 (1984 ed). The right to control an agent's activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent's principal. See *Cowan* v. *Eastern Racing Ass'n,* 330 Mass. 135, 141-142 (1953); *Khoury* v. *Edison Elec. Illuminating Co.,* 265 Mass. 236, 238 (1928); Restatement (Second) of Agency § 220 (1958). Cf. *Brigham's Case,* 348 Mass. 140, 141-142 (1964) (same principle applied in deciding whether a person was an "employee" under workers' compensation statute).

The plaintiff makes the broad assertion that a physician cannot be a servant, or a "public employee" under G. L. c. 258, because the principal (or "public employer") will always lack the ability to direct and control the details of a physician's treat-

ment of patients. As the plaintiff acknowledges, however, our cases have not adopted the position that a physician is always an independent contractor. See *McMurdo* v. *Getter,* 298 Mass. 363, 364 (1937);[2] *Harnish v. Children's Hosp. Medical Center,* 387 Mass. 152, 159 (1982); *Kapp* v. *Ballantine,* 380 Mass. 186, 195 (1980).[3] See also *Florio v. Kennedy,* 18 Mass. App. Ct. 917, 918 (1984) (salaried physician at Worcester State Hospital was a "public employee" immune from tort liability under G. L. c. 258, § 2); Rep. A.G., Pub. Doc. No. 12, at 106, 107 (1980); Restatement (Second) of Agency § 220 comment i (1958).

It is true, however, that the very nature of a physician's function tends to suggest that in most instances he will act as an independent contractor. Another person, unless a physician himself, would have no right (or desire) to exercise control over the details of the physician's treatment of a patient; the profession is distinct and requires a high level of skill and training; and the physician must use independent judgment. See *Pearl* v. *West End St. Ry.,* 176 Mass. 177, 179 (1900). In the *McMurdo* case, the court stated that "[t]he position of a physician normally is not that of a servant of anyone." *McMurdo* v. *Getter, supra* at 368. There is some authority for the proposition that a physician is not a servant where the principal cannot control the details of the physician's activities.[4]

---

[2] In deciding that a physician paid a salary by the defendants to prescribe eyeglasses, if needed, was a "servant of the defendants," the court said: "We conclude that the physician is the servant of the defendants (*Stuart* v. *Sargent,* 283 Mass. 536, 541 [1933]), notwithstanding the fact that the defendants actually exercise no control over 'the mode, manner or result of the examination of the eyes of the customer and the doctor is left free to exercise his own will . . . [and] judgment and to use his own professional skill and methods in making such examination.' *McDermott's Case,* 283 Mass. 74, 77." *McMurdo* v. *Getter, supra* at 364.

[3] In the last two cases cited, this court rejected the claim that certain defendant physicians were servants of the defendant hospital, noting that the record did not show that the hospital had power of control or direction over the surgeon's professional conduct (but not saying a master-servant relationship could never exist between a corporation and a physician).

[4] This point has been made in some cases under the Federal Tort Claims Act. See *Wood* v. *Standard Prods. Co.,* 671 F.2d 825, 830-831 (4th Cir.

See, e.g., *Overstreet* v. *Doctors Hosp.* 142 Ga. App. 895, 897 (1977).

There is hardly any question whether the doctor here was a servant. A house officer, such as a resident, has duties and obligations at a hospital that demonstrate that he or she is a servant. The general rule is that a resident is a servant of the hospital. See D.M. Harney, Medical Malpractice § 6.5 (1973); IIB Hospital Law Manual § 4-2, at 52 (March, 1984). In this case, the question is whether undisputed material facts show that the doctor was a servant of the city (or one of its departments). Only if that is so was summary judgment for the doctor warranted. The motion judge appears to have recognized the issue, but he failed properly to assess the summary judgment material to determine what evidence tended to show that the doctor was subject to the direction and control of the hospital. That he filed a memorandum entitled *"Findings of Fact* and Rulings of Law" (emphasis supplied) and in that memorandum stated that "this Court finds that Dr. Rossi was *not* [underlining in original] a borrowed or loaned servant of" the hospital suggests that the motion judge improperly weighed the evidence and made findings of fact.[5]

---

1982); *Walker* v. *United States,* 549 F. Supp. 973, 976 (W.D. Okla. 1982). But see *Quilico* v. *Kaplan,* 749 F.2d 480, 482 (7th Cir. 1984); *Lurch* v. *United States,* 719 F.2d 333, 337 (10th Cir. 1983), cert. denied, 466 U.S. 927 (1984) (cases in which the claim was made that immunity was granted to the defendant physician by Federal statute [38 U.S.C. § 4116 (1982)]). In construing the Massachusetts Tort Claims Act, we normally would look for assistance from the Federal courts' treatment of cognate provisions of the Federal Tort Claims Act (*Vasys* v. *Metropolitan Dist. Comm'n,* 387 Mass. 51, 54 [1982]). Here Federal cases may not be a clear guide because Congress has legislated specifically concerning the exemption from liability of certain physicians working for the government. See, e.g., 38 U.S.C. § 4116(a) (1982); 10 U.S.C. § 1089 (1982) (military doctors); *Quilico* v. *Kaplan, supra* at 485-487 (Veterans' Administration doctors). It is true, however, that generally the parallel question under the Federal Tort Claims Act is whether the alleged master has the right to control the activities of the alleged servant. See *United States* v. *Orleans,* 425 U.S. 807, 813-814 (1976); *Logue* v. *United States,* 412 U.S. 521, 527-528 (1973) (power "to control the detailed physical performance of the contractor").

[5] In a situation such as this, where an employee of one person goes to work at the premises of another person, the cases have considered whether

We conclude that the summary judgment material shows a factual dispute as to whether the doctor was a "public employee," that is, a servant of the city. We summarize the facts that tend against such a finding (and tend to show that she was a servant of the hospital). Because the plaintiff's claim arises from the alleged negligence of the doctor in the emergency room, we must focus on those facts tending to show that, while working in the hospital's emergency room, the doctor was not subject to the direction and control of the city. See *Khoury* v. *Edison Elec. Illuminating Co.*, 265 Mass. 236, 239 (1928); Restatement (Second) of Agency § 227 comment a (1958). These facts appear in the doctor's deposition and in the deposition of the hospital's director of medical affairs.

During the day the doctor worked with and studied developmental pediatrics under a doctor on the staff of the hospital. Every third or fourth night she was assigned to emergency room duty at the hospital pursuant to a schedule established at the Boston City Hospital. The doctor, when working in the emergency room, was obliged to follow the policies and procedures established by the hospital set forth in "massive volumes," as the doctor testified. She could neither admit a patient nor discharge a patient without the permission of a physician designated by the hospital. She had no choice as to which patients to treat, and the hours of the shift a resident was to serve in the emergency room were fixed by the hospital. She was obliged to follow the hospital's requirements for keeping emergency room records. The hospital could determine that it no longer wanted her services, although it could not discharge her from the residency program at Boston City Hospital. When

the employee was a "borrowed or loaned servant" of the second person. The basic question is generally no different from the normal one in determining whether an employee is the servant of a particular principal (see *Roby* v. *Boston & Me. R.R.*, 337 Mass. 369, 371-372 [1958]; *Coughlan* v. *Cambridge,* 166 Mass. 268, 277 [1896]), although in the absence of evidence to the contrary, the inference, or rebuttable presumption (see *Harrington* v. *H.F. Davis Tractor Co.*, 342 Mass. 675, 678 [1961], is that the employee remains in his general employment. See *Sawtelle* v. *Mystic Valley Gas Co.*, 1 Mass. App. Ct. 672, 676 (1974); Restatement (Second) of Agency § 227 comment b (1958).

a rotating resident arrives, by a brief orientation process the resident is given a general description of his or her administrative responsibilities and how to carry them out and of his or her clinical responsibilities.

These facts, tending to show that the doctor was a servant of the hospital and not the city, were countered by evidence that the city was the doctor's employer. For example, the doctor thought of Boston City Hospital as her employer. We need not recite all that evidence because it is not important in deciding the issue before us. The fact is that there was a dispute of material fact as to whether the doctor was the servant of Boston City Hospital while on rotation and working in the emergency room at the Kennedy Memorial Hospital. For this reason, the judge erred in ordering judgment for the doctor.[6]

*Judgment reversed.*

---

[6] We reject any suggestion that the doctor was engaged in a discretionary function in treating the patient so as to make G. L. c. 258, §§ 1-8, inapplicable to this claim. See G. L. c. 258, § 10. The doctor was governed by the standard of accepted medical practice, an ascertainable guide to proper conduct. See *Cady* v. *Plymouth-Carver Regional School Dist.,* 17 Mass. App. Ct. 211 (1983).

In a reply brief, the plaintiff raises an argument which was not presented to the motion judge or in his initial brief to this court. Such an argument comes too late. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975), and 16 (c), 365 Mass. 860 (1974). See *Travenol Laboratories, Inc.* v. *Zotal, Ltd.,* 394 Mass. 95, 97 (1985); *Commissioner of Revenue* v. *Plymouth Home Nat'l Bank,* 394 Mass. 66, 67 n.3 (1985). The point might be pressed at trial and thus we say that, if the Trustees of Health and Hospitals of the city rather than the city or the city hospital are the "public employer" of the doctor, the trustees do not appear to be "an independent body politic and corporate" (like the Massachusetts Port Authority or the Massachusetts Turnpike Authority) excluded from the definition of a "public employer" set forth in G. L. c. 258, § 1. See *Kargman* v. *Boston Water & Sewer Comm'n,* 18 Mass. App. Ct. 51, 56-57 (1984).