Lenk, J.
The plaintiff, Kathleen Quinn-Weinstein, brings this medical malpractice action as the Ad-ministratrix for the estate of her mother, OraV. Quinn. The plaintiff alleges that doctors Kelly, Fernando, Singh, and DeFazio were negligent in their care and treatment of the decedent.
Defendants Fernando, Singh, and DeFazio all have moved for summary judgment at this time.[3]
For the reasons stated below, defendants Fernando, Singh, and DeFazio’s motions for summary judgment are ALLOWED.
BACKGROUND
The material undisputed facts which follow were derived from the pleadings and the affidavits of the parties.
*402 The decedent, Ora V. Quinn, was admitted to the Emergency Room of Worcester City Hospital on November 17, 1990 for treatment of a fractured right hip. Ms. Quinn died on November 18, 1990, of respiratory failure. She was 78 years old.
Plaintiff alleges that the defendant doctors’ treatment of her mother fell far below the acceptable standards of medical care. Specifically, plaintiff asserts that the doctors failed to recognize, diagnose, and treat for digoxin toxicity, that they failed to treat abnormal digoxin levels with the proper medication, and that they failed to place Quinn on a cardiac monitor to watch for cardiac arrhythmia. Thus, plaintiff claims it was as a direct and proximate cause of each defendant’s negligence that Ora V. Quinn suffered digoxin toxicity. This toxicity, plaintiff asserts, progressed to cardiac arrhythmias and ultimately led to the cardio-respiratory arrest that ended Quinn’s life.
Defendant DeFazio was a physician[4] who saw Quinn at some point between her initial admission to the Emergency Room at 2:43 p.m. on November 17, 1990 and her admission to Worcester City Hospital later that day.[5] Since Quinn first came to the Emergency Room because of a fractured hip, DeFazio was brought in for an orthopedic consultation.
Defendant Singh was a physician in charge of Quinn’s care at the time of her admission to the hospital (about 5:00 p.m. on the evening on November 17, 1990) until about 1:00 p.m. on the following day.
Defendant Fernando[6] was a physician in charge of Quinn’s care on November 18. His shift started at about 7:00 a.m. on November 18 and continued through 12:00 noon on November 19.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c).
Because all three moving defendants present similar arguments as to why summary judgment is appropriate at this time, I will address their motions together.
Under the Massachusetts Tort Claims Act, “public employees” are immune from personal liability for allegedly negligent acts committed in the course of their employment. G.L.c. 258, section 2. The issue of whether a medical doctor employed by the Commonwealth may be considered a “public employee” under the statute may be resolved as a matter of law. Florio v. Kennedy, 18 Mass.App.Ct. 917 (1985); Williams v. Bresnihan, 27 Mass.App.Ct. 191 (1989).
In both the Florio and the Williams cases, the defendants submitted affidavits clearly establishing that they were medical residents working for public institutions. These affidavits set forth certain recognized indicia of a medical “employer-employee” relationship, including the fact that the residents were paid a fixed salary, were allowed to see no private patients, and did not have the authority to admit patients.
In Williams, however, the plaintiff argued that the defendants were not entitled to immunity because their attending physician was himself not a public employee.
The plaintiff raises precisely this argument in the case at bar. This argument, however, must fail. As was the case in Williams, the bald assertion that the defendant’s attending physician is not a public employee — even if proved — cannot alter the public employee status of the defendants. Williams v. Bresnihan, 27 Mass.App.Ct. 191 (1989). Thus, whatever Dr. Robert F. Kelly’s status may in the future be determined to be, that determination will not change the outcome of the “public employee” issue vis-a-vis Singh, Fernando, and DeFazio.
In the present case it is manifest that doctors Singh, Fernando and DeFazio were public employees. Like the defendants in Florio and Williams, these defendants were paid by the city (or the state), were paid a fixed salary, had to work assigned hours, had no admitting privileges, saw no private patients, and were controlled and directed by supervisors.
All three moving defendants submitted affidavits setting forth various points, such as: their status as residents, their lack of choice with regard to duties and patients, their duty to report to supervisors, their receipt of a fixed salary, paid vacation, and sick leave; their inability to see private patients, and their lack of admitting privileges. In addition, each moving defendant submitted his or her contract from the city or state employer verifying their status as residents.[7]
As a final word, the court notes that the parties in their briefs have touched upon the Kelly v. Rossi, 395 Mass. 659 (1985), and Smith v. Steinberg, 395 Mass. 666 (1985), decisions. We need not dwell long on either of them. These cases, the Supreme Judicial Court held, presented factual “grey areas” involving “dual employment”[8] and these complications made summary judgment inappropriate.
The facts of this case, on the other hand, are neatly ordered. Clearly all three doctors were residents, and to them we can safely apply the general rule that medical residents are servants of the hospital. Kelly v. Rossi, 395 Mass. 659, 663 (1985).[9]
Summary judgment is therefore appropriate at this time.
ORDER
It is therefore ORDERED that defendants Fernando, Singh, and DeFazio’s motions for summary judgment be ALLOWED.

 Plaintiff opposes each of these motions.

 DeFazio was a resident in a rotating Emergency Medicine program through the University of Massachusetts Medical Center. Under the terms of this program DeFazio practiced at several different hospitals in the central Massachusetts area. During November 1990 she was assigned to an orthopedic residency program at Worcester City Hospital.

 A decision was made at about 4:59 p.m. on November 17 to admit Quinn to the Orthopedic Service at Worcester City Hospital for her right hip fracture.

 At the time defendant treated Quinn he was an internal medicine resident at Worcester City Hospital.

 Singh’s contract, entitled Residency Program Appointment Agreement ran from July 1, 1990 to June 30, 1991. Fernando’s contract, similarly titled, ran from June 25, 1990 to June 30, 1991. DeFazio’s contract, entitled Residency Program Reappointment Agreement, ran from July 1, 1990 to June 30, 1991.

 Kelly and Smith were decided on the same day.

 In Kelly v. Rossi, 395 Mass. 659 (1985), the defendant was a resident at Boston City Hospital who was assigned to a private hospital. It was this private hospital, and not Boston City Hospital, that set her hours and made her follow its policies. In Smith v. Steinberg, 395 Mass. 666 (1985), the defendant was a professor at a public medical school; however he had rights in a group practice, where he chose his own patients and hours. In both cases the Supreme Judicial Court held summary judgment was inappropriate on the “public employee’’ issue.