Burnes, J.
Plaintiff, Joyce Morin, (“Morin”), as executrix of the estate of her husband, Raymond Morin (“Mr. Morin”), brought this medical malpractice action against defendants, Jeffrey Leppo, M.D. (“Dr. Leppo”), and John Baga, M.D. (“Dr. Baga”), seeking recovery for the alleged wrongful death of Mr. Morin. Morin claims that Dr. Baga negligently failed to diagnose and treat her husband’s cardiac condition, to heed the results of a Persantine Thallium stress test, and to recommend coronary angiography to evaluate Mr. Morin’s condition. Morin asserts that Dr. Baga’s negligence caused Mr. Morin’s death.
Dr. Baga now moves for summary judgment arguing that, as a matter of law, the Massachusetts Tort Claims Act immunizes him from liability for any alleged negligence since he is a “public employee” under the statute. Morin opposes Dr. Baga’s motion, asserting that general issues of material fact exist as to Dr. Baga’s status as a “public employee” at the time of the incident. For the reasons set forth below, defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
In December 1990, Mr. Morin came to the Cardiovascular Clinic at the University of Massachusetts Medical Center (“UMass Medical”), complaining of occasional chest discomfort and some shortness of breath with exertion. Dr. Baga, a cardiology resident at UMass Medical, evaluated Mr. Morin and ordered a number of tests, including a Persantine Thallium Stress Test, which was performed on January 22, 1991. Dr. Baga received the test results and reported them to Mr. Morin, telling him that he could resume his regular activities so long as they were not too stressful.
In February 1991, Mr. Morin suffered an acute anterolateral wall myocardial infarction which compromised his left ventricular function. This caused him to become disabled and no longer self-sufficient. On October 17, 1993, Mr. Morin died.
At the time Dr. Baga treated Mr. Morin, UMass Medical employed Dr. Baga in the Cardiology Residency Program. As a resident, Dr. Baga was subject to all the rules, regulations, by-laws and standards of conduct applicable to all professional employees of the Commonwealth of Massachusetts. The treatment and medical care Dr. Baga provided to cardiology patients was subject to the direction, supervision, approval and control of the attending physicians in the cardiology department and the faculty members of the University of Massachusetts appointed to the department. The Fellowship Program Director of the Division of Cardiology at UMass Medical, Dr. Gerard Aurigemma, determined Dr. Baga’s work schedule and assigned or supervised Dr. Baga’s assignments to the various rotations. Dr. Baga had no discretion over which patients to care for, treat or evaluate and possessed no admitting privileges.
DISCUSSION
Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing "that the summary judgment record entitled the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 808, 809 (1992); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating facts which establish the existence of *303 a genuine issue of material fact. Pederson, 404 Mass. at 17.
The Massachusetts Tort Claims Act (“the Act”), provides that “public employers will be liable for injury ... or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment. . .” G.L.c. 258, §2. If the statute applies, the public employer is liable for plaintiffs harm and the public employee is freed from liability for his or her negligent actions. Kelly v. Rossi, 395 Mass. 659, 661 (1985); Williams v. Bresnahan, 27 Mass.App.Ct. 191, 192 (1989). When examining this statute’s applicability in a case, therefore, the seminal questions become whether defendant’s employer is a “public employer” under the Act and, then, whether defendant is a “public employee.” In this case, it is well settled by the Supreme Judicial Court and agreed upon by the parties that UMass Medical is a “public employer” for purposes of the Act.[3] McNamara v. Honeyman, 406 Mass. 43, 47-48 (1989).
The remaining and disputed question, then, is whether Dr. Baga is a “public employee.” The mere fact that UMass Medical is a “public employer” does not automatically establish that all the resident-physicians it employs are “public employees.” McNamara, 406 Mass. at 48. Rather the legal principles that govern the determination whether a resident-physician is a “public employee” are “the same as those that have determined whether an agent is a servant for whose negligent acts a principal may be liable under the common law doctrine of respondeat superior.” Kelley, 395 Mass. at 661. The central focus, therefore, is the level of direction and control UMass Medical, as a “public employer,” possessed over the details of Dr. Baga’s activities. Id. at 662.
The Supreme Judicial Court has already examined the interplay between a resident and his or her affiliated hospital. Id. at 663. In Kelley, the Court found that the hospital possesses a great power to direct and control the activities of its residents. Id. Therefore, implicit in being a resident is the fact that the physician is a servant of the hospital with which he or she is affiliated. Id. Flowing from this is the finding that if the hospital is deemed a “public employer,” the resident, as a servant of that hospital, is a “public employee.” See id.
While this proposition seems well settled and simple enough, a problem arises when the resident is affiliated with one hospital which is a “public employer” but is rotated to another hospital that is not a “public employer” and some alleged negligence occurs at this second hospital. See e.g., Kelley, 395 Mass. at 660-61; Gravlin v. Janes, Civil No. 941603C, 7 Mass. L. Rptr. 155, 155 (August 25, 1997); Ziehl v. Roman, Civil No. 932390A, 7 Mass. L. Rptr. 156, 157 (August 25, 1997). In these cases, a pivotal question of fact arises in determining “whether the public employer is exercising direction and control over the physician at the time of the alleged malpractice; or whether another, private medical employer is exercising actual direction and control over the resident physician at the time of the alleged malpractice.” Gravlin, 7 Mass. L. Rptr. at 155. Since resolution of this determination raises material questions of fact, summary judgment is almost uniformly denied. See Kelley, 395 Mass. at 662; Gravlin, 1 Mass. L. Rptr. at 155; Ziehl, 7 Mass. L. Rptr. at 156.
This is not the factual situation in Mr. Morin’s case. Dr. Baga was a resident affiliated with UMass Medical and the alleged malpractice happened at that hospital. As discussed, supra, because Dr. Baga was a resident at UMass Medical, he was also a servant of UMass Medical and subject to the direction and control of the hospital’s faculty and staff. As a resident, Dr. Baga was subject to all the rules, regulations, by-laws and standards of conduct applicable to all professional employees of the Commonwealth of Massachusetts. Dr. Baga’s medical treatment and care provided to cardiology patients was subject to the direction, supervision, approval and control of the attending physicians in the cardiology department and the faculty members of the University of Massachusetts appointed to the department. The Fellowship Program Director of the Division of Cardiology at UMass, Dr. Gerard Aurigemma, determined Dr. Baga’s work schedule and assigned or supervised Dr. Baga’s assignments to the various rotations. Dr. Baga had no discretion over which patients to care for, treat or evaluate and possessed no admitting privileges.[4]
Crucial to the analysis of this case is the fact that Dr. Baga treated Mr. Morin at UMass Medical. See Florio v. Kennedy, 18 Mass.App.Ct. 917, 918 (1984) (finding physician who was employed by public hospital and treated patients there was under that hospital’s direction and control). It is this fact that distinguishes this case from Kelley, Gravlin, and Ziehl. Therefore this Court finds that, as a matter of law, Dr. Baga is a public employee under the Massachusetts Tort Claims Act and is entitled to the immunity that statute bestows.
ORDER
It is hereby ORDERED that defendant’s motion for summary judgment is ALLOWED.

General Laws c. 258, §1, defines “public employer” as “the commonwealth and any county, city, town, educational collaborative, or district . . . and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof which exercises direction and control over the public employee.” In McNamara the Court reasoned that the University of Massachusetts is an agency of the Commonwealth because the Massachusetts State Comptroller possesses the authority to regulate the University’s annual appropriations, the University’s board of trustees’ purchasing power is limited by state statute, em *304 ployees of the University are statutorily designated as state employees and the sale and lease of land by the trustees of the University are made in the name of the Commonwealth and are regulated by statute. McNamara, 406 Mass. at 47.

Morin contends that Dr. Baga was not under the direction and control of the Commonwealth at the time he treated Mr. Morin because Dr. Baga exercised his own education, training and background when treating Mr. Morin and evaluating his charts. However, in McNamara the Court specifically stated that “[w]hile physicians may exercise independent judgment, [he or she] can still be deemed a servant where the principal controls the details of the physician’s activities.” McNamara, 406 Mass. at 48. As demonstrated, supra, UMass Medical did precisely this.