Kern, J.
INTRODUCTION
Amy Beth Weinberg (“Mrs. Weinberg”) and Ira David Weinberg (“Mr. Weinberg”) bring the present action on behalf of their minor child, Erica Ruth Weinberg (“Erica"), as parents and next friend and individually (collectively, “Plaintiffs”) against Richard B. Wolk, M.D. (“Dr. Wolk”) and Columbia Hospital Corporation of Massachusetts, Inc., the General Partner of Columbia Metro West Health Care System, Limited Partnership (“MetroWest”) (collectively, ’’Defendants”) for medical malpractice. Specifically, Plaintiffs allege Negligence (2 counts against Dr. Wolk), Breach of Contract (against Dr. Wolk and MetroWest), Vicarious Liability/Apparent Agency (against Metro West), and Loss of Care and Companionship (against Dr. Wolk and Metro West). Metro West filed a Motion for Summary Judgment on the grounds that it was entitled to relief because the only claim of negligence was against Dr. Wolk and Dr. Wolk was not an employee of MetroWest. At the hearing on this motion on May 16, 2001 and after clarification that negligence was being asserted against other Metro West personnel, Metro West amended its motion and requested partial summary judgment as to its vicarious liability for Dr. Wolk’s alleged negligence. For the following reasons, Metro *396 West's Motion for Partial Summary Judgment is ALLOWED as to Count V (Breach of Contract); and DENIED as to Counts IV (Vicarious Liability/Apparent Agency) and VII (Loss of Care and Companionship).[3]
BACKGROUND
Erica (9V2 years old at the time of the incident) had been complaining of lower abdominal pain for several days. On March 14, 1998, her parents called her pediatrician, Dr. Baumel, who referred Erica to the emergency room at MetroWest for evaluation. On March 14, 1998, Dr. Porter, a pediatrician covering pediatric emergencies at MetroWest, evaluated Erica. Dr. Porter ordered abdominal x-rays and later discharged Erica with a presumptive diagnosis of gastroenteritis. On March 15, 1998, Erica’s parents took her to see Dr. Baumel because her symptoms continued. Dr. Baumel evaluated Erica in his office and established a differential diagnosis of an infectious process with a possibility of an ovarian cyst. Dr. Baumel referred Erica back to Metro West for evaluation and treatment. On March 15, 1998, Erica returned to Metro West and was evaluated by Dr. Mady (the pediatrician providing care for pediatric emergencies at the emergency room of MetroWest). Dr. Mady ordered another set of abdominal x-rays. Additionally, Dr. Mady ordered an abdominopelvic ultrasound. Laurie Yanaway (“Yanaway”) a radiology technician, was called in to perform the ultrasonographic study on Erica. Yanaway then electronically transmitted the films to Dr. Wolk. Dr. Wolk evaluated the films and communicated his conclusions to Dr. Mady. Dr. Wolk’s ultrasonographic report indicated that Erica’s ovaries were normal. Dr. Mady discharged Erica. Soon thereafter, because of Erica’s continued pain, she was taken to Children’s Hospital in Boston where she was diagnosed with a torsion of her adnexa. Erica underwent emergency surgery and her left ovary and left fallopian tube were removed.
On March 15, 1998, Yanaway was an employee of Metro West and Dr. Mady was the pediatric physician on call in the Emergency Room at MetroWest. Dr. Mady was responsible for seeing all pediatric patients presenting to the emergency department. Dr. Mady had no independent, private patients at this time. Further, on March 15, 1998, Dr. Wolk was the radiologist on call for MetroWest. Dr. Wolk had staff privileges at Metro West, but his salary and benefits were provided by West Suburban Radiology Associates. The Chairman of the Radiology Department at MetroWest assigned the call coverage rotations for the radiologists at MetroWest. The policy and procedure by which ultrasounds for gynecological examinations be performed was set by MetroWest. MetroWest billed patients for the professional services of Dr. Wolk and other radiologists. Additionally, the Emergency Department Registration requested authorization for Metro West to provide care and treatment and financially obligated the signatory to Metro West for all treatment.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 281 (1997); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there are no genuine issues of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate an absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of the claim at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishmg the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
A. Breach of Contract Claim
In order to establish a breach of contract claim in the context of a medical malpractice case, the plaintiff must demonstrate “clear proof’ that the health care provider promised a particular medical result. Sullivan v. O’Connor, 306 Mass. 579, 582-83 (1973); see also Clevenger v. Haling, 379 Mass. 154 (1979). Recovery may be awarded only when a physician has made a statement which could have reasonably been interpreted as a promise that a given result or cure would be achieved. Clevenger, 379 Mass. at 158-59; Sullivan, 306 Mass. at 581-83.
Plaintiffs have not provided evidence of any statements by Dr. Wolk, Dr. Mady, Yanaway or any hospital personnel which could be construed as a promise of a particular medical result in connection with Erica’s treatment. The court notes that Plaintiffs do not even address this claim in their Opposition to Motion for Summary Judgment. Accordingly, the Plaintiffs’ breach of contract claim cannot survive summary judgment.
B. Vicarious Liability
“The right to control an agent’s activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent’s principal.” Kelley v. Rossi, 395 Mass. 659, 661 (1985) (citing Cowan v. Eastern Racing Ass’n, 330 Mass. 135, 141-42 (1953)). “(T]he very nature of a physician’s function tends to suggest that in most instances he will act as an independent contractor.” Id. at 662. *397 However, Massachusetts case law directs this court to consider various factors to determine whether a doctor is subject to the direction and control of a hospital. Id. at 664. In Kelley, the Supreme Judicial Court reversed summary judgment which was entered in favor of the defendant doctor because there were facts in the record to support the claim that the doctor was an employee of the hospital, rather than the city.[4] Id. at 664-65. Some of the specific facts which the Court considered were that: the doctor was assigned to the emergency room every third or fourth night pursuant to a schedule set by the hospital; the doctor was obligated to follow the hospital’s policies and procedures; the doctor had no choice as to which patients to treat; and .the hours of the shift were fixed by the hospital. Id. at 664.
Similarly, in the case at bar, Dr. Wolk was assigned to Metro West by the Chairman of the Department of Radiology at MetroWest. (Deposition of Dr. Wolk at p. 26, line 15 - p. 27, line 20.) The Chairman set the schedules and fixed the length of the shifts for Dr. Wolk and the other radiologists with staff privileges at MetroWest. Id. There was a policy and procedure set by Metro West regarding ultrasounds in connection with gynecological examinations which Dr. Wolk and Yanaway were obligated to follow. (Opposition to Defendant’s Motion for Summary Judgment (“Opposition”), Exhibit 4.) Dr. Wolk was assigned to be the radiologist on call at Metro West on March 15, 1998 and was specifically assigned to Erica. Dr. Wolk had no ability to turn away Erica or any other patient during that shift. Further, the Emergency Department Registration form requested authorization from Erica’s parents for MetroWest to provide treatment and consent to be financially obligated to Metro West for the services of the physicians. (Opposition, Exhibits 1 and 2.)
Based on these facts, Plaintiffs have produced sufficient evidence to support their claim that Dr. Wolk may have been an agent of MetroWest, and thus, the claim against MetroWest survives summary judgment.
CONCLUSION
Since Plaintiffs cannot establish that any hospital personnel or health care provider promised a specific medical result in connection with Erica’s medical treatment, Metro West is entitled to summary judgment on Count V (Breach of Contract). Plaintiffs have provided sufficient evidence to show that there is a dispute as to whether Dr. Wolk was an agent of Metro West, hence, Metro West is not entitled to summary judgment on Counts IV (Vicarious Liability/Apparent Agency) and VII (Loss of Care and Companionship).
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendant MetroWest’s Motion for Partial Summary Judgment be:
(1) ALLOWED as to Count V (Breach of Contract); and
(2) DENIED as to Counts IV (Vicarious Liability /Apparent Agency) and VII (Loss of Care and Companionship).

 The court notes that there is no Count VI in the Complaint, but Loss of Care and Companionship is listed as Count VII.

 In Kelley, the defendant doctor asserted she was an employee of the city, and thus, a public employee immune from liability under G.L.c. 258, §2 (Massachusetts Tort Claims Act). Id. at 661. The trial court granted summary judgment in favor of the defendant doctor. Id. at 660.