Connolly, J.
For purposes of a summary judgment the Court must consider the facts and the inferences from those facts in the light most favorable to the party opposing the motion. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). The Court does not find facts in a hearing on a motion for summary judgment. Kelley v. Rossi, 395 Mass. 659, 663 (1985). The Court must determine whether there are genuine issues of material fact in dispute. If there are such issues of material fact in dispute, the Court must deny the motion. Further, the trial judge has discretion in determining whether the civil action is an appropriate one for summary judgment.
This personal injury case arises out of an incident at Logan Airport on March 7, 2000 around 10:15 a.m. The plaintiff, Ms. Jennifer Howie, was employed by Massachusetts Port Authority as a taxi dispatcher/controller and stationed at Terminal B. A taxi cab, owned by Elsie’s Cab, Inc. and operated under an alleged “lease” by Stephen O. Ikechukwuka (aka “Ike”), entered a line of taxis, out of order, in the area of Terminal B. Ms. Howie requested Ike’s authorization ticket and asked him to take his proper place in line. “Ike” refused. As Ms. Howie was writing a violation ticket to give to “Ike,” “Ike” allowed his cab to roll over and onto Ms. Howie’s left foot, causing an alleged severe and permanent injury. Upon making a claim, the plaintiffs counsel found that they had entered into and had to deal with the strange world of Boston taxicabs, their individual incorporations, their “self-insured” status and their attempts to avoid their financial responsibilities when one of its drivers is in a serious accident.
The cab involved in this accident was a “Boston Cab.” It was a painted exactly like every other Boston cab in Boston. When one calls Boston Cab, the number is 617-536-5010, and the phone is answered as “The Boston Cab Company.” Its drivers hand out business cards that have “Boston Cab Company” on them.
After a review of the submissions and from defendant’s counsel’s oral admissions in open Court the following facts were ascertained. Elsie’s Cab, Inc. is a Massachusetts corporation with no assets or employees. It is self-insured up to the minimum liability amounts ($20,000 for injury to one person). It is bonded by Arbella Insurance Company up to the minimum amount of insurance. The only officer of Elsie’s Cab is one Edward Tutenjin. At hearing, defendant’s counsel stated that Mr. Tutenjin owned approximately 75 Boston Cabs. Many are individual corporations with no assets, and some may have a few cabs, however, all without any assets. All are self-insured, with a bond with Arbella Insurance, in the minimum amount of insurance, namely, $20,000.
Mr. Edward Tutenjin is also the principal officer of the corporation, EJT Management, Inc. The letters “EJT’ apparently are taken from Mr. Tutenjin’s name. “EJT’ was a company that “leased” out the 75 taxicabs (plus other cabs owned by other single cab corporations and other entities) to the individual drivers of the taxicabs. There was no written lease agreement between Elsie’s Cab and “EJT.” Basically, they were one and the same, both having as their address 60 Kilmarnock Street, Boston, MA. Both corporations are owned by the same person, Edward Tutenjin. EJT basically leased the cabs, manages the “Boston Cab Company,” maintains and services the cab, staffs the Boston Cab telephone answering service, and repairs the cabs in its body shop. All the cabs are housed at 60 Kilmarnock Street, Boston. Further, Elsie’s Cab, pays no money or fee for any services rendered by EJT Management. Specifically, Elsie’s Cab does not pay any money to EJT, including any management fees, service or maintenance fees, fees for garaging the cab at 60 Kilmarnock St., and no fees for processing any claim made against it. No money is paid back to Elsie’s Cab, Inc. by EJT Management from the “lessee” of the taxicab. The “lessee” ostensibly pays $75 per shift for the lease of the cab to EJT.
*41 Basically, the Boston Cab Company is EJT Management. EJT provides all services for the cab, and is not paid any money for these services by Elsie’s Cab. The attorneys fees for the defense of this case are not being paid by Elsie’s Cab, Inc. or by Arbella Insurance (the bonder for the $20,000 self-insurance), according to defense counsel who represents all three entities.
Further, an alleged “separate” entity known as Arthur Gallagher Company handles any and all claims being made against any of the individual taxicab corporations. Arthur Gallagher Company had its offices in the exact same building as EJT at 60 Kilmarnock St., Boston, MA, and had its own telephone number (apart from Boston Cab’s telephone number). Arthur Gallagher Company, for Elsie Cab’s claims, would send out letters to any possible claimants on stationary entitled “Elsie Cab,” and the phone number on the stationary was the claims phone of Arthur Gallagher Co. at 60 Kilmarnock Street. Evidently, the defendants Elsie’s Cab and EJT did not want claimants and other people to know that Elsie Cab was associated with the longer entity, namely, Boston Cab.
The plaintiffs position on this motion is that there are sufficient facts to allow the plaintiff to attempt to pierce the corporate veil of “EJT,” and to make it also liable for any judgment issued against Elsie’s Cab, Inc. The case will go to the jury, at a minimum, against Elsie’s Cab under chapter 231, §85A.
From the evidence set out above, there is far more than sufficient evidence to send the case to the jury on a theory of “piercing the corporate veil.” See: My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614 (1968); Pepsi-Cola Metropolitan Bottling Co., Inc. v. Checkers, Inc., 754 F2d, 10, 14-16 (1st Cir. 1985); Evans v. Multicon Construction Corp., 30 Mass.App.Ct. 728, 732-33 (1991); Diane M. Dujon v. Terry Williams, et al. 5 Mass. Law Reporter 456, 1996 WL 402344 (Mass. Superior) (Botsford, J., 1996); and John Marrokanis v. Boston Cab Association, Inc. Locust Cab, Inc. and George Bowab, Suffolk CA #98-4172-B, decided on October 25, 2000 (Doerfer, J.). Here on the above-referenced facts, the jury could find that there was a “confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity on which the various corporations and their representatives are acting.” My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968). “Where there is common control of a group of separate corporations engaged in a single enterprise, failure ... to oversee with care the formal barrier between the corporations with a proper segregation of their separate businesses, records, and finances may warrant some disregard of the separate entities in rare particular situations in order to prevent gross inequity.” Id., p. 620.
Further, assuming arguendo that this issue was close, which this Court does not believe that it is, the Court is of the opinion that the better course to follow would be to deny this motion, try the entire case, and deal with this issue on a motion for a directed verdict or on a motion JNOV. In that way, the case will have to be tried only once and appealed once. Also, since the same attorney represents all three defendants, there would be little or no additional costs in attorneys fees.
Any other arguments in the motion for summary judgment are without merit, in light of the medicals and other documents submitted.

ORDER

The motion of the Defendant, EJT Management, Inc. for summary judgment is DENIED both as a matter of law and as a matter of discretion.