Fecteau, Francis R., J.
On May 20, 1999, Brayanna Young was admitted to UMass Memorial Medical Center where she ultimately died on May 24, 1999. In her amended complaint, Brayanna’s mother, Jennifer Tomaccio (“the plaintiff’), alleges that the individual doctors and nurses that attended to Brayanna, as well as UMass Memorial Medical Center, each breached their duty of care to Brayanna and are thus liable for medical malpractice. Further, the complaint alleges wrongful death, breach of contract, and negligent and intentional infliction of emotional distress as to each defendant.
This matter is now before this Court on Jacqueline Trottier’s (“Nurse Trottier”) Motion for Summary Judgment and Entry of Separate and Final Judgment. Nurse Trottier argues that at the time of Brayanna’s treatment and subsequent death she was a public employee of the Commonwealth of Massachusetts performing acts within the scope of her public employment and, thus, immune from suit under G.L.c. 258, §2. The plaintiff opposes Nurse Trottier’s motion and contends that summary judgment is inappropriate because there is a genuine issue of material fact as to whether Nurse Trottier was a public employee at all relevant times. The parties were heard in argument on this motion on April 20, 2007. For the following reasons, Jacqueline Trottier’s Motion for Summary Judgment is DENIED.

SUMMARY JUDGMENT RECORD

The summary judgment record contains the following undisputed facts and disputed facts viewed in the light most favorable to the nonmoving parties.
On May 20, 1999, Brayanna was admitted to the pediatric floor of UMass Memorial Medical Center. Her mother was concerned because Brayanna had been lethargic and had a weight loss of 300 grams. While she was hospitalized, among other things, a nasal-gastro feeding tube was placed and utilized, x-rays were taken, and an EKG was performed. On May 24, 1999, the attending nurse could not get a blood pressure reading from Brayanna. Nurse Trottier’s first involvement with Brayanna was on May 24, 1999. Her shift began at 7:00 a.m. and she first saw Brayanna at 7:30 a.m. At 8:56 a.m., a nurse called a code blue and doctors began cardiopulmonary resuscitation. The efforts to resuscitate Brayanna were not successful and she was pronounced dead a short time later.
On April 1, 1998, UMass Medical Center, a state facility, merged with Memorial Health Care, a private non-profit corporation. The merger resulted in two new private non-profit corporations, UMass Memorial Health Care, Inc. and UMass Memorial Medical Center. Prior to this merger the fact that UMass Medical Center was a public employer and an agency of the Commonwealth is undisputed. The merger of UMass Medical Center with the Memorial Hospital was permitted by enabling legislation that essentially separated the academic function of the medical center from the clinical.[4] Following the merger, and for a transition period that covers the time in question, two classes of clinical employees who were formerly employed at the medical center were permitted, one that included university employees who would remain on the payroll of the university but leased, in effect, to the non-profit corporation, and the other consisting of those who became employees of the non-profit corporation immediately.[5] Those employees who remained as university employees appear to have retained rights of representation under the labor agreement, all of the fringe benefits of state employment and protection against lay-off by the corporation. The record demonstrates that nurse Trottier was a member of this former class. Unfortunately, the parties have not favored the record with any evidence as to which entity controlled, on the date in question, the performance by the defendant of clinical services to the patients of the hospital, including the right to terminate employment for cause.
*486 During the times relevant to this motion for summary judgment, Nurse Trottier was a staff nurse in the pediatric department of UMass Memorial Medical Center-University Campus. She received a salary which was not influenced by the number of patients to which she was assigned or the unit to which she was assigned. Her schedule was assigned by the nursing manager for her department. She was eligible for benefits from the State Retirement Board and her salary was paid by the Commonwealth.[6]

DISCUSSION

Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See Mass.R.Civ.P. 56(e). Conclusory statements, general denials, and allegations not based on personal knowledge are insufficient to avoid summary judgment. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Rather, the non-moving party bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine issue for trial. See Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999).
Under the Massachusetts Tort Claims Act, public employers are liable for the “negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment.” G.L.c. 258, §2. A “public employee” is defined as an employee of a “public employer.” G.L.c. 258, §1. A “public employer” is defined as an institution or agency of the Commonwealth “which exercises direction and control over the public employee.” Id. Prior to the merger, as a medical and academic institution that received funding from the state, the University of Massachusetts Medical Center was an agency of the Commonwealth, whose employees were generally public employees subject to its direction and control.[7]
The motion and opposition suggests two issues related to whether this defendant was a public employee on the relevant date: first, whether Nurse Trottier continued to be a public employee, after the merger and at the time of her treatment of the plaintiffs decedent, subject to the direction and control of the university and thus allowing her to be immune from suit for her negligent conduct that is alleged to have occurred within the course of her employment;[8] second, the plaintiff contends that, even if Nurse Trottier continued to be a putative public employee following the merger, that she exercised sufficient independence of judgment and authority that she should be treated as an independent contractor, such as is seen in the analysis of whether physicians are public employees.
On the motion record presented by the parties, the court concludes that the defendant, having the burden of proof on the issue of the entitlement to immunity as a public employee, has failed to conclusively establish the absence of a genuine issue of fact as to whether Nurse Trottier continued to be subject to the direction and control of the university or of a private entity, such as the UMass Memorial Medical Center. The motion record is sparse as to the lines of command and control over the clinical staff after the merger.[9] Her affidavit demonstrates that at the time relevant to this case, she received a salary from the Commonwealth of Massachusetts, that her salary was not influenced by the number of patients to which she was assigned or the unit to which she was assigned, that her schedule was assigned by the nursing manager for her department, she was eligible for benefits from the State Retirement Board and she was eligible for a state health insurance plan. McNamara v. Honeyman, 406 Mass. 43, 48 (1989). The attachments to the defendant’s motion support the suggestion that she remained as a public employee following the merger and through the date in question.
The plaintiff has offered little to rebut this suggestion and little to support the contrary: that she was subject to control by any party who was not a public employer. Wooster, 46 Mass.App.Ct. at 673. While the plaintiff denies that Nurse Trottier received a salary from the Commonwealth of Massachusetts at the time of Brayanna’s treatment, she fails to support this assertion with any supporting evidence. Nurse Trottier’s Final Employee Service Record, W-2 Wage & Tax Statement (1999), and affidavit support her contention that she remained on the rolls of the Commonwealth of Massachusetts until June 26, 1999, at least as far as payment of salary and fringe benefits are concerned. However, as the case law has informed this issue, the payment of salary and benefits is not conclusive. Of more significance is the direction and control over the employee in connection with the performance of services at issue.
The same legal principles that determine whether a principal should be liable for the acts of its agent under the doctrine of respondeat superior apply here to determine whether Nurse Trottier was a public employee, an employee of a private employer or an independent agent or contractor. Kelley v. Rossi, 395 Mass. 659, 661 (1995). “The right to control an agent’s *487 activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent’s principal.” Id. This analysis typically applies to physicians and involves making a determination of whether they retained sufficient independence of judgment free from direction or control by others. Generally, physicians are not subject to the direction and control of others (unless that person is also a physician) and must utilize their high level of skill and training in exercising their independent judgment. Id., at 662. In contrast, residents are viewed differently than physicians because residents have duties and obligations at hospitals that show that they are servants of the hospital. Id. at 663. Further, residents are subject to the supervision of attending physicians and do not have the same degree of independent judgment that physicians possess. Nurses are subject to even greater direction and control by the staff and attending physicians with whom they work. In addition, they function within the hierarchy of the nursing service of the hospitals in which they work. Nurses are not free to exercise their independent judgment to the degree that doctors do.
As is noted in the case of Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. 424 (2001), “[t]he decisions cited by Quorum stand for the generally accepted proposition that a physician performing medical services in a hospital acts as an independent contractor, and not as a servant of the hospital, unless the hospital has the power of control or direction over the physician’s professional conduct. . . These cases are inapposite. Although the very nature of the medical profession suggests that, in most instances, a physician acts as an independent contractor, see Kelley v. Rossi, 395 Mass. 659, 662 (1985), there is hardly any question that a member of a hospital’s nursing staff is a servant of the hospital.” Id. at 622-23. [Internal citations omitted and underline added.) This case, in which was involved the question of the vicarious -liability of a private manager of a public hospital for the negligence of a nurse employed by a municipality, appears to provide sufficient support for recognition of a genuine issue of material fact as to whether the defendant was subject to direction and control of a private employer, which forecloses entitlement to a judgment in her favor as a matter of law; since the defendant was a member of the clinical staff of the hospital, she was likely subject to the day-to-day control of the hospital with respect to patient care. As stated by Billings, J., in a case that involved a similar issue but concerning the employment of a resident physician, “the overall context in which the residents cared for [the plaintiff therein], and such particulars of that care as appear in the evidence create, at the veiy least, a genuine issue of fact that stands in the way of a determination, as a matter of law, that they were public employees. Their status appears instead to be that of borrowed servants — recruited, paid, and administered by the University, but on assignment to do the Medical Center’s work, and subject in the relevant particulars to the Medical Center’s direction and control.” Carnaci v. Pillarisetty, 2006 WL 3292762 (Mass.Super. 2006).
Because the defendant has failed to introduce sufficient evidence that compels a finding as a matter of law with regard to this or any other relevant issue, a genuine issue continues to exist as to whether Nurse Trottier is public employee, entitled to immunity from personal liability under G.L.c. 258, §2. Thus, as a matter of law, summary judgment is inappropriate.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment be denied.

The legislative declaration of purpose to Ch. 163 of the Acts of 1997, which enabled the merger of these institutions, states: “it is fiscally desirable for the commonwealth, and will benefit the medical school, graduate school of nursing and graduate school of biomedical sciences and the citizens of the commonwealth, to separate the operations, assets, liabilities and obligations of the existing clinical division of the University of Massachusetts Worcester from the commonwealth so that the clinical division may operate as a self-supporting entity and that the interests of the citizens of the commonwealth, the region and the communities served by the clinical division will best be met by transferring the operations, assets, liabilities and obligations of the clinical division to one or more nonprofit corporations in order to create a separate legal and organizational structure for the clinical division for the purpose of ensuring independence and flexibility of management; and . . Id. at §1(i).

Section 5(c) of Ch. 163 of the Acts of 1997, relates to registered nurses: “[a]ll registered nurses employed by the university within the clinical division who are represented by the Massachusetts Nurses Association ... on the effective date of the transfer or merger or consolidation authorized by section 4 shall either be employees of the university whose services are provided to a corporation pursuant to an agreement between the university and the corporation or be offered employment by a corporation, in either case within the same position and at the same campus or location as immediately prior to said effective date . . .”

The motion record reflects that she was identified on the rolls of the university until June 27, 1999, at which time she was transferred to UMass Memorial Health Care. The record reflects that she received two W-2 forms for 1999, from the Commonwealth of Massachusetts and firom UMass Medical Center.

As the many decisions of this court points out, with respect to physicians, this general rule was not without exception.

While there is no distinction between public and private employers as far as the analysis to determine vicarious responsibility for the actions of their employees is concerned, the distinction of significance arises in connection with immunity for negligent actions of the public employee, for which there is no comparison in the private employment context.

There have been other decisions by this court with respect to the analysis, post-merger, of the claims by physicians *488 for public employee status in which the motion records contained more evidence upon which control issues could be determined. See Carnaci v. Piliarisetty, 2006 WL 3292762 (Mass.Super. 2006); Martinez v. UMass Memorial Health Care, Inc., 2006 WL 1646154 (Mass.Super. 2006) (21 Mass. L. Rptr. 103); Mensah v. Goedken, 2006 WL 1075453 (Mass.Super. 2006) (21 Mass. L. Rptr 6). In those cases, the motion records appear to have supported the existence of the issue of whether a particular physician/employee was subject to either dual or joint control by the university and the non-profit corporation following the merger through separate affiliation agreements, or that the control by the hospital, now a private, non-profit entity, over patient care was superior to the academic lines of command asserted by the public medical school. Here, neither party offered evidence in the motion record as to the issue of control of the clinical nursing staff following the merger by the nursing hierarchy within the non-profit corporation.