Lemire, James R., J.
This is a medical malpractice action in which the plaintiff, Steven C. Litchfield (“Litchfield”), alleges that the defendant, Dr. James C. Bayley (“Dr. Bayley”), was negligent in his treatment and care of Litchfield while Litchfield was a patient at the University of Massachusetts Medical Center (“UMMC”). At the time of the alleged negligence, Dr. Bayley was an attending physician in the Department of Orthopedics at UMMC and an associate professor of orthopedic surgeiy at the University of Massachusetts Medical School (“UMMS”). Litchfield’s claim arises from Dr. Bayley’s performance of a surgical procedure during which calcified material was removed from Litchfield’s spine in an effort to alleviate his back pain. Litchfield alleges that the procedure worsened his condition.
On February 2, 2007,1 presided over ajuiy-waived trial on the sole issue of whether Dr. Bayley was a “public employee” during his performance of Litchfield’s surgeiy and, therefore, whether he is immune from individual liability under the Massachusetts Tort Claims Act, G.L.c. 258, §2.

FINDINGS OF FACT

At all relevant times, Dr. Bayley was an associate professor of orthopedic surgery at UMMS and an attending physician in the Department of Orthopedics at UMMC. With regard to Dr. Bayley’s employment I find the following facts.
Dr. Bayley was employed by the Commonwealth of Massachusetts.
Dr. Bayley’s day to day activities were controlled by the public employer, namely the Commonwealth of Massachusetts, through the department chair at the University of Massachusetts Medical School. I find that Dr. Bayley did make decisions in connection with the treatment of patients.
I find that Dr. Bayley’s superiors regulated his hours.
I find that the doctor had no say as to the clinic hours or the patients he would treat.
I find that the doctor’s income was not based on the number of patients he treated.
I find that Dr. Bayley was subject to the policies, rules and regulations of the University of Massachusetts Medical School.
I find that the doctor’s treatment of patients was used as a means to teach medical students and residences.
I find the doctor was required to assume duties assigned to him by the department head, namely Dr. Arthur Pappas (“Dr. Pappas”).
I find that his performance was reviewed by Dr. Pappas on a regular basis.
I find that Dr. Bayley was required to attend department meetings weekly, with additional monthly meetings held with the department head, Dr. Pappas.
I find that the department head, Dr. Pappas, and/or other administrators had final approval/control of the doctor’s work schedule, including hours and assignments. I find that Dr. Bayley needed to obtain approval to take vacation and/or personal time.
I find that his daily schedule was determined by the department head.
I find that Dr. Bayley was required to treat patients assigned to him and that the plaintiff Litchfield became Dr. Bayley’s patient in that way.
I find that he was required to supervise residents or others who treated the plaintiff.
I find that he did not have discretion as to which patients he treated, however when he first began employment with University of Massachusetts Medical School he did have a few patients who followed him from the previous employment and that these patients became patients of the clinic as compared to the private patients of Dr. Bayley.
I find that Dr. Bayley did not treat Mr. Litchfield as an independent provider.
*301 I find that Dr. Bayley was paid a fixed salary by the Commonwealth of Massachusetts.
I find that Dr. Bayley’s salary was not dependent on the amount of money that he generated or the number of patients he saw.
I find that his salary was determined by his productivity and that productivity was judged against the extent to which he was reaching the employer’s goals.
I find that Dr. Bayley did not bill the patients directly; that all billing of any patients treated by Dr. Bayley was through the state billing plan which in no way affected Dr. Bayley’s income.
I find that Dr. Bayley participated in the Commonwealth of Massachusetts retirement plan, health insurance plan, and other benefit packages that he was eligible to receive through the Commonwealth of Massachusetts.

RULINGS

The legal principles that govern whether a doctor is a “public employee” of a government employer and, therefore, freed from liability to the plaintiff by G.L.c. 258, §2, are the same as those that govern whether an agent is a servant for whose negligent acts a principal may be liable under the common-law doctrine of respondeat superior. Kelley v. Rossi, 395 Mass. 659, 661 (1985). “(T]he very nature of a physician’s function tends to suggest that in most instances he will act as an independent contractor,” rather than as a public employee. Id. at 662. While physicians exercise independent judgment, however, “a physician can still be deemed a servant where the principal controls the details of the physician’s activities.’’ McNamara v. Honeyman, 406 Mass. 43, 48 (1989). Thus, the central question is whether the doctor, in his treatment of the plaintiff, “was subject to the direction and control of the Commonwealth, acting through the [University of Massachusetts [MJedical [S]chool], through the group practice plan, or otherwise.” Smith v. Steinberg, 395 Mass. 666, 669 (1985).
Based on the foregoing findings, I conclude that Dr. Bayley was subject to the direction and control of UMMS, a public employer,[1] in the performance of Litchfield’s surgery. Significantly, Dr. Bayley’s hours were subject to regulation by his supervisors, he had no discretion as to his clinic hours or which patients he would treat, he did not have private patients, and his income was not based on the number of patients he treated. See McNamara, 406 Mass. at 48; see also Hopper v. Callahan, 408 Mass. 621, 634 (1990) (“[T]he right to control hours and working schedules and the right to supervise [a state employed psychiatrist’s] activities and who his patients would be are also relevant considerations”). Although Dr. Bayley did exercise independent judgment in making certain decisions in connection with the treatment of his patients, including Litchfield, this is true of any attending physician tasked with a patient’s care. See, e.g., Kelley, 395 Mass. at 662. In all relevant respects, Dr. Bayley was subject to the daily direction and control of his UMMS supervisors and his treatment of Litchfield was subject to review by the department head, Dr. Pappas. Contrast Smith, 395 Mass. at 668 (defendant orthopedic surgeon and associate professor at UMMS not entitled to summary judgment under Tort Claims Act where he “had control (outside of his instructional duties at the medical school) over his hours of work, where he worked, and which patients he would treat, taking them directly or by referral from other physicians”).
In sum, while Dr. Bayley performed the spinal surgery that is alleged to have worsened Litchfield’s condition, the Commonwealth, through UMMS and its group practice plan, controlled the details of Dr. Bayley’s activities. See McNamara, 406 Mass. at 48. Accordingly, whereas the Commonwealth or UMMS may have been liable for the alleged harm as public employers, see id. at 46, Dr. Bayley is immune from individual liability by virtue of his status as a public employee. See G.L.c. 258, §2.

ORDER

For the foregoing reasons, it is hereby ORDERED that judgment enter declaring that the defendant, Dr. Bayley, was at all relevant times a “public employee” for purposes of G.L.c. 258, §2, and that he is therefore immune from individual liability for tort claims arising out of his treatment of the plaintiff, Litchfield.

See McNamara, 406 Mass. at 47.