Toomey, J.
The plaintiffs, Tammy and James Derry (the “Derrys”), brought this action for negligence, wrongful death and loss of consortium against the defendant, Cristina Blejan-Schram, M.D. (“Dr. Blejan-Schram”). The Derrys allege that Dr. Blejan-Schram’s actions and omissions caused the death of their unborn child. Dr. Blejan-Schram has now moved for summary judgment on the grounds that, at the time she treated Tammy Derry, she was a public employee and thus immunized by G.L.c. 258, §2, from tort liability. For the following reasons, the defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
The following facts are drawn from the summary judgment record.
In July 1996, Dr. Blejan-Schram was a Post-Graduate Year 2 resident at the University of Massachusetts Medical Center’s (“UMMC”) Family Practice Resident Program. As a resident in that program, Dr. Blejan-Schram was required to act in accordance with the policies and procedures of UMMC and the policies, rules and regulations of the Board of Trustees of the University of Massachusetts. Dr. Blejan-Schram was required to attend regularly scheduled conferences where she reported to Dr. Vance Brown, the Director of UMMC’s Family Practice Residency Program, on academic and clinical matters.
Dr. Brown was directly responsible for the supervision, direction and control of Dr. Blejan-Schram as a resident enrolled in the program. He executed Dr. Blejan-Schram’s yearly University of Massachusetts/Worcester Personnel Action contracts and set Dr. Blejan-Schram’s work schedule, including the hours that she worked and the rotations and assignments on which she worked. Dr. Brown was also required to approve Dr. Blejan-Schram’s requests for vacation and personal time off from work.
In July 1996, Dr. Blejan-Schram was assigned by Dr. Brown to an OB/GYN rotation at Saint Vincent Hospital (“SVH”), a private hospital in Worcester. That assignment was a condition of her employment at UMMC and could not be declined by her.
Residents, such as Dr. Blejan-Schram, participating in the OB / GYN rotation at SVH were provided with orientation material when they began their rotation. The material was prepared principally by Dr. Sara Shields, with some input from Dr. Aaron Mendel, and included a general introduction to the obstetric rotation at SVH. It also set forth information regarding lectures, parking lot stickers, identification badges, computer access, obtaining scrubs, and photocopier use while at SVH. The material listed the educational resources available at SVH and provided examples of the various OB/GYN forms used there. It also listed telephone numbers for Drs. Shields and Mendel and other important extensions within the hospital.
Dr. Shields was affiliated with the family practice residency at UMMC as an assistant professor. In that capacity, she was a non-clinical teacher on the OB/GYN rotation. She maintained a private medical practice and had privileges to see patients at SVH. Dr. Mendel, a physician affiliated with Fallon Clinic, provided instruction for residents at SVH. His teaching duties consumed one half day per week.
Neither Drs. Shields nor Mendel prepared the curriculum for the residents on rotation, at SVH. The doctors would discuss patients with the residents as the expectant mothers came into the labor and deliv *741 ery areas of SVH, but did not prepare any guidelines or protocols for the residents while on the obstetric floor. There were also no SVH medical policies or procedures that the residents were required to follow during their rotations. If problems presented during their rotation, residents were invited to Dr. Mendel for discussion.
Dr. Blejan-Schram was assigned to an on-call schedule in the labor and delivery unit at SVH. While on-call, Dr. Blejan-Schram was sometimes the only physician present in the unit. There was no requirement that an attending physician be on the unit at all times. In her capacity as the on-call resident, Dr. Blejan-Schram’s role was to evaluate patients and, if an attending physician was present, to assist him or her in managing the patient. If the attending was not present, Dr. Blejan-Schram was expected to notify the attending of the patients’ progress and to implement any orders issued by the attending. .
If an attending had concern about a resident’s performance, the attending would speak to Dr. Mendel who would, in turn, discuss the concern with the resident. An attending might also write an evaluation card for a resident. The cards were given to Drs. Mendel or Shields for review. Those doctors would write an evaluation of each resident at the end of the block rotation and forward the evaluations to the residency office.
Dr. Blejan-Schram did not have discretion over which patients she would treat at SVH. She was required to treat any and all patients who presented during the time she was assigned to work. Dr. Blejan-Schram never billed patients directly or received payment from any patient, an insurer or the hospital. She did not practice medicine outside of the program during her second year of residency nor did she have any private patients of her own.
Dr. Blejan-Schram was paid a stipend by the Commonwealth for her work. Her salary was not variable and did not depend on the number of patients she treated or the number of hours she worked. As an employee of the Commonwealth, Dr. Blejan-Schram participated in both the Commonwealth’s contributory retirement system and the Commonwealth’s group health, dental and life insurance plans.
DISCUSSION
Summary judgment will be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that it is entitled to judgment in its favor. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim in which the party moving for summary judgment does not have the burden of proof at trial, that party may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or by “demonstrating that proof of that element is unlikely at trail.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion for summary judgment.” Pederson, 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. Lalond v. Eissner, 405 Mass. 207, 209 (1989).
In support of her motion for summary judgment, Dr. Blejan-Schram contends that she was a public employee of the Commonwealth at all times relevant to this action and that she is, therefore, immune from liability by reason of the Massachusetts Tort Claims Act. That statute, G.L.c. 258, §2, provides that:
no . . . public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.
The plaintiffs respond that a factual dispute exists as to Dr. Blejan-Schram’s employment status at the time of the alleged negligence and that summary judgment is, accordingly, inappropriate. For the reasons stated infra, the defendant has the better of the dispute.
The fact that UMMC is a public employer does not ipso facto render all of its staff “public employees.” McNamara v. Honeyman, 406 Mass. 43, 49 (1989). The essential issue, determinative of the question of “public employee” vel non, is to what extent Dr. Blejan-Schram was subject to the direction and control of the public employer. See Kelley v. Rossi, 395 Mass. 659, 661 (1985). Our task is to determine whether or not the evidence suggests a genuine issue of material fact as to sufficiently pervasive “direction and control” by the public employer. More specifically, the analysis focuses on the nature and character of the employer’s control, that is, we must examine whether the control is limited to general oversight of the defendant’s activities or, rather, extends to particularized direction of the defendant’s function.
That analytic course persuades this Court that there is no evidentiary contradiction of the suggestion that Dr. Blejan-Schram was subject to the sole direction and control of UMMC. Dr. Blejan-Schram was required to act in accordance with the policies and procedures of UMMC and the policies, rules and regulations of the Board of Trustees of the University of Massachusetts. She attended regularly scheduled conferences where she reported to Dr. Vance Brown, the Director of the Family Practice Residency Program *742 at UMMC. Dr. Brown supervised Dr. Blejan-Schram as a resident involved in the program. He executed her yearly contracts, set her work schedule and had to approve any vacation and/or personal time off from work that she sought.
Dr. Blejan-Schram was paid a stipend by the Commonwealth for her work. Her salary did not depend on the number of patients she treated or the number of hours she worked. As an employee of the Commonwealth, she participated in both the Commonwealth’s contributory retirement system and group health, dental and life insurance plans.
Dr. Blejan-Schram did not have any discretion over which patients she would treat. She was required to treat any and all patients presented to her. She never billed patients directly or received payment from any patient, their insurer or the hospital. She did not practice medicine outside of the program during her second year of residency nor did she have any private patients of her own.
The evidence presented by this Rule 56 record suggests that there is no genuine issue of material fact as to Dr. Blejan-Schram’s status as a “public employee” within G.L.c. 258, §2, at all material times. Plaintiffs argue, however, that the instant case is similar to Kelley v. Rossi, 395 Mass. 659 (1985), in which the Supreme Judicial Court found that summary judgment was inapposite because a factual dispute existed as to whether the defendant physician was a public employee. This Court finds Kelley to be distinguishable from the case at bar in material respects and thus rejects plaintiffs view that Kelley ought govern the instant dispute.
The,evidence in Kelley depicted the doctor as a second-year resident who was enrolled in a program based at the Boston City Hospital (BCH). Id. at 660. As a part of the BCH program, the residents rotated to other hospitals where they were then supervised by the staff of the recipient hospital. Id. at 664. The focus of the Supreme Judicial Court’s inquiry was whether the doctor was subject to the direction and control of the city while working in the private hospital’s emergency room. Id. In finding that there was evidence that the doctor was a servant of the private hospital and not of the city, the Court alluded to proofs that the doctor was obliged to follow the policies and procedures of the private hospital, that she had no choice as to which patients to treat, that her hours were fixed by the private hospital, that she was obliged to follow the private hospital’s requirements for keeping records, and that the private hospital could determine that it no longer desired her services. Id. at 664-65. The Court further noted that when a rotating resident arrived, the resident was provided, by a brief orientation process, with a general description of her responsibilities and how to carry them out. fcb That evidence, suggesting private employment, was, however, countered by other evidence to the effect that the city wasthedoctor’semployer.[1] Kelley, 395 Mass. at 665. Thus, the Supreme Judicial Court concluded in Kelley that there was a true dispute of material fact as to whether the doctor was the servant of BCH while on rotation and working in the emergency room at a private hospital. Id.
Although Dr. Blejan-Schram was also a second year resident performing a rotation at a private hospital, the control exercised by SVH was significantly less global than that exercised by the private hospital in Kelley. The evidence in Kelley depicted the doctor as subject to pervasive control by the private hospital. The hospital set her hours, expected her to abide by its policies and procedures, and could terminate her at will. Dr. Blejan-Schram, on the other hand, was not obliged to follow the policies and procedures of SVH, her hours were not fixed by SVH, and there were no set hospital guidelines or protocols for her to follow while on the obstetric floor. Furthermore, Dr. Blejan-Schram was not subject to any supervision by SVH staff. She was obliged to follow orders prescribed by the patient’s attending physician, but the attending did not directly supervise Dr. Blejan-Schram’s execution of those orders. The attending might write an evaluation of her work; the evaluations were, however, used only to monitor Dr. Blejan-Schram’s progress as a resident and not as a way to supervise or control her time at SVH.
Although the orientation material provided to Dr. Blejan-Schram by SVH set forth information regarding her rotation at SVH, the material addressed general, non-professional information such as parking lot stickers, ID badges, computer access and important phone numbers. The orientation items do not constitute compelling evidence that SVH exercised sufficient direction or control over the doctor’s professional activities to suggest that she functioned as a private employee of SVH.
Taking the evidence in the light most favofable to the plaintiffs, see Williams v. Hartman, 413 Mass. 398 (1992), Kelley, 395 Mass. at 659, the Court concludes that a reasonable fact finder could not find that Dr. Blejan-Schram, a UMMC resident working a rotation at SVH, was under the direction and control of SVH. On the evidence at bar, there is no genuine issue of material fact as to the label to be affixed to Dr. Blejan-Schram’s employment. The instant record compels the conclusion that, at the time of the alleged incident, Dr. Blejan-Schram was indeed a public employee and is thus immunized by G.L.c. 258, §2, from tort liability.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED.

The evidence presented by the doctor was not recited in the Court’s published opinion.