Toomey, J.
INTRODUCTION
This is a malpractice action in which the plaintiffs, Peter Trainor and Mary Trainor, allege that the defendants, Subhash Gulati, M.D. (“Dr. Gulati”), Subhash C. Gulati, M.D., F.A.C., P.C., the Commonwealth of Massachusetts, and Peter Nelson, M.D. (“Dr. Nelson") negligently removed Peter Trainor’s left colon, thereby causing him to undergo further surgery and the removal of almost his entire colon. Dr. Nelson has now moved for summary judgment on the grounds that, at the time he treated Peter Trainor, he was a public employee and thus immunized by G.L.c. 258, §2, from tort liability. For the following reasons, the defendant’s motion for summary judgment is DENIED.
BACKGROUND
An assessment of the evidence, suggested by the summary judgment submissions in their aspect most favorable to the non-moving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoted with approval in G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991)), results in the following factual assumptions.
From-July 1, 1997 through June 30, 1998, Dr. Nelson was employed by the Commonwealth of Massachusetts, by and through the University of Massachusetts Medical Center (“UMMC”), as a resident in the UMMC General Surgery Residency Program of the Department of Surgery. On October 31, 1997, at the time of his involvement in the care and treatment of Peter Trainor, Dr. Nelson was a Fourth-Year Post Graduate resident (“PG-4”). As a PG-4 resident, Dr. Nelson was required to act in accordance with the policies and procedures of UMMC, the policies, rules and regulations of the Board of Trustees of the University of Massachusetts and all applicable Memorial Health Care (“Memorial”) policies, rules, by-laws, regulations and procedures.[2]
Dr. Nelson attended regularly scheduled educational conferences in which he reported to Dr. Wayne Silva, the Director of the UMMC General Surgery Residency Program, on academic and clinical matters. Dr. Nelson was subject to the supervision, direction and control of Dr. Silva. Dr. Silva interviewed and hired Dr. Nelson for the residency program, executed Dr. Nelson’s yearly contracts, and had responsibility with regard to Dr. Nelson’s employment in the general surgery residency program at UMMC. Dr. Silva was required to set Dr. Nelson’s work schedule, including the general hours he worked and rotations on which he worked. In addition, Dr. Silva was required to approve Dr. Nelson’s vacation and personal time off from work.
On October 31, 1997, Dr. Nelson became involved in Mr. Trainor’s care because Mr. Trainor presented for treatment at Memorial, a private hospital, during the time that Dr. Nelson was assigned an UMMC rotation at Memorial. That assignment was a condition of his employment at UMMC and could not be declined by him. Dr. Silva had no role with respect to the particular patients tended by Dr. Nelson or the surgeries in which Dr. Nelson was involved at Memorial. Patient and surgical assignments for the residents were directed by the chief resident of the service of Memorial. When, as a PG-4 surgical resident, Dr. Nelson was assigned a case by the Memorial chief resident, he would accompany the attending surgeon into the operating room and receive his instructions from that attending surgeon.
Dr. Nelson did not have discretion over which patients he would treat at Memorial. He was required to treat any and all patients who presented during the time he was assigned to work at Memorial. Dr. Nelson never billed patients directly or received payments from any patient, an insurer or the hospital. He did not practice medicine outside of the program during his PG-4 residency nor did he have any private patients of his own.
Dr. Nelson was paid a stipend by the Commonwealth for his work. His salary was not variable and did not depend on the number of patients he treated or the number of hours he worked. Dr. Nelson participated in both the Commonwealth’s contributory retirement plan and the Commonwealth’s group health, dental and life insurance plans.
*170 SUMMARY JUDGMENT STANDARDS
Summary judgment will be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that it is entitled to judgment in its favor. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim in which the party moving for summary judgment does not have the burden of proof at trial, that party may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or by “demonstrating that proof of that element is unlikely at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). "If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion for summary judgment.” Pederson, 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. Lalond v. Eissner, 405 Mass. 207, 209 (1989).
THE DISPUTE
In support of his motion for summary judgment, Dr. Nelson contends that he was a public employee of the Commonwealth at all times relevant to this action and that he is, therefore, immune from liability by reason of the Massachusetts Tort Claims Act. That statute, G.L.c. 258, §2, provides that:
no . . . public employee . . . shall be liable for any injury or loss of properly or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.
The question that follows is whether Dr. Nelson’s role was that of a “public employee” at the time of his services to Peter Trainor.
Massachusetts General Law e. 258, §1, defines a “public employee” as any employee of a “public employer,” which is, in turn, defined by the statute as any agency or institution of the Commonwealth which exercises “direction and control” over the public employee. The fulcrum issue in the genre of cases to which the matter at bar belongs is, therefore, whether or not the party rendering the challenged services was under the “direction or control” of the Commonwealth at the time of said services.
Dr. Nelson claims there is no factual contest that he was indeed a “public employee” at the pertinent time and should now be favored with statutory immunity. The Trainors respond that a factual dispute does exist as to Dr. Nelson’s status as a “public employee” at the time of the alleged negligence and that summary judgment is, accordingly, inappropriate. For the reasons stated infra, the Trainors shall prevail.
DISCUSSION
The fact that UMMC is a public employer does not ipso facto render all of its staff “public employees.” McNamara v. Honeyman, 406 Mass. 43, 49 (1989). A physician is not necessarily a public employee merely because a public entity pays his or her salary, provides a retirement fund or manages a vacation schedule. Kelley v. Rossi, 395 Mass. 659, 662 (1985). The essential inquiry, determinative of the question of “public employee” vel non, is to what extent Dr. Nelson was subject to the direction and control of the public employer. See id. at 661. Our task is to determine whether or not the evidence suggests a genuine issue of material fact as to the existence of sufficiently pervasive “direction and control” by the public employer. More specifically, the analysis focuses on the nature and character of the employer’s control; that is, we must examine whether the control is limited to general oversight of the defendant’s activities or, rather, extends to particularized direction of the defendant’s function. See Williams v. Hartman, 413 Mass. 398, 400 (1992) (the Supreme Judicial Court underscored that direction and control over the details of the physician’s treatment of the patient ought be the court’s focus in assessing the issue of direction and control).
In reviewing the defendant’s motion for summary judgment, “[w]e must, of course credit the record facts that are most favorable to the plaintiffl)...” Hopper v. Callahan, 408 Mass. 621, 628 (1990). Employing that analytical bias to the instant case, this court finds that a question of fact exists as to whether UMMC or Memorial physicians provided Dr. Nelson with instruction and guidance amounting to pervasive “direction and control” within the meaning of the law. See Kelley, 395 Mass. at 661-63. Mr. Trainor was Dr. Gulati’s private patient. Dr. Gulati evaluated Mr. Trainor in his private office and scheduled his surgery for October 31, 1997 at Memorial Hospital. Dr. Nelson admitted in his deposition that one of his functions as a PG-4 surgical resident at Memorial was to accompany the attending surgeon into the operating room, learn from that attending surgeon and sometimes actually perform certain aspects of the surgery.
Dr. Nelson further testified that “as an assistant and as a resident in surgery, generally, we’re under guidelines of the attending surgeon ... He [Dr. Gulati] would have directed the case from start to finish.” Dr. Nelson’s testimony suggests that the staff of Memorial, a private hospital, played a significant role in his (Dr. Nelson’s) professional care and services during the particular surgery at bar. Furthermore, the deposition evidence reveals that Dr. Nelson was given his instructions for surgery by Dr. Gulati and that he relied upon Dr. Gulati’s knowledge of the patient as he (Dr. Nelson) treated Peter Trainor. Dr. Nelson’s deposition also *171 averred that the UMMC residency program director, Dr. Silva, had overview, but no participatory, functions with respect to the specific patients Dr. Nelson saw or the surgeries in which he was involved while at Memorial. Furthermore, Dr. Nelson never discussed the Peter Trainor surgery with Dr. Silva. That evidence, if believed, would warrant a finding adverse to the notion of immunity.
The defendant, on the other hand, offers evidence in support of his position that he was a public employee and, therefore, immune under G.L.c. 258, §2. Dr. Nelson was required to act in accordance with the policies and procedures of UMMC and the policies, rules and regulations of the Board of Trustees of the University of Massachusetts. He attended regularly scheduled educational conferences where he reported to Dr. Silva. Dr. Silva exercised administrative supervision of Dr. Nelson as a resident involved in the program; Dr. Silva executed his yearly contracts, set his work schedule and approved any vacation and/or personal time off from work that Dr. Nelson sought.
Dr. Nelson was paid a stipend by the Commonwealth for his work. His salary did not depend on the number of patients he treated or the number of hours he worked. As an employee of the Commonwealth, he participated in both the Commonwealth’s contributory retirement system and group health, dental and life insurance plans.
Dr. Nelson did not have any discretion over which patients he would treat. He was required to treat any and all patients presented to him. He never billed patients directly or received payment from any patient, their insurer or the hospital. He did not practice medicine outside of the program during his PG-4 residency, nor did he see any private patients of his own. In addition, Dr. Silva conducted regular performance evaluations of Dr. Nelson and each resident physician who was in the general surgery residency program. That evidence, if believed, would warrant a finding consistent with the notion of immunity.
The facts in the instant matter are similar to those extant in Kelley, the oft-cited case in which the Supreme Judicial Court found a genuine issue of material fact as to whether the physician was a servant of her public employer and, therefore, an immunized public employee. See Kelley, 395 Mass. at 661-63. In Kelley, the resident-physician was in the public employer’s residency program and was on a one-month rotation at a private hospital where she rendered treatment to the plaintiff. Id. at 664. The focus of the Supreme Judicial Court’s inquiry was whether the doctor was subject to the direction and control of the public employerthe City of Bostonwhile working in the private hospital’s emergency room. Id.
In finding that there was evidence that the doctor was a servant of the private hospital and not of the City, the Court alluded to proofs that the doctor was obliged to follow the policies and procedures of the private hospital, that she had no choice as to which patients to treat, that her hours were fixed by the private hospital, that she was obliged to follow the private hospital’s requirements for keeping records, and that the private hospital could determine that it no longer desired her services. Id. at 664-65. That evidence, suggestive of private employment, was, however, countered by other evidence to the effect that the City exercised direction and control over the doctor’s doings. Id. at 665. Thus, the Supreme Judicial Court concluded in Kelley that there was a true dispute of material fact as to whether or not the doctor was the immunized servant of the City while on rotation and working in the emergency room at the private hospital. Id.
A similar evidentiary clash is illumined by the Rule 56 submissions at bar. The instant evidence, viewed objectively, would support either conclusion advanced by the disputants. There is warrant for the proposition that direction and control of Dr. Nelson rested in UMMC and there is justification for the competing thesis that Memorial directed and controlled Dr. Nelson. The evidence at bar is akin to that which prompted the Kelly result and the conclusion at bar will likewise mirror the Kelly outcome.[3]
CONCLUSION
Taking the evidence in the light most favorable to the Trainors; see Williams v. Hartman, 413 Mass. 398 (1992); Kelley, 395 Mass. at 659; the court concludes that a reasonable fact finder could find that Dr. Nelson, a UMMC resident working a rotation at Memorial, was under the direction and control of Memorial. On the other hand, Dr. Nelson did offer evidence which might prompt the same finder to endorse his position that he was a public employee. There, exists, therefore, a genuine issue of material fact as to the character of Dr. Nelson’s employment, an issue that must be resolved, if at all, by trial.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is DENIED.

 Reference herein, to Memorial Health Care are intended to include the campus of the Memorial Hospital which is affiliated with UMMC and which provides the locus for services rendered by UMMC student-physicians.

 This Court finds Derry v. Blejan-Schramm, Worc. Sup. Ct. No. 97-1720 (March 13, 2001) (12 Mass. L. Rptr. 740), to be distinguishable from the case at bar. The evidence in Derry depicted Dr. Blejan-Schram as a second year UMMC resident, enrolled in a program at Saint Vincent Hospital (“SVH"), but subject to non-pervasive control by that private hospital. Dr. Blejan-Schram was not obliged to follow the policies and procedures of SVH, her hours were not fixed by SVH, and there were no set hospital guidelines or protocols for her to follow while on the obstetric floor. Furthermore, Dr. Blejan-Schram was not subject to any supervision by SVH staff. She was obliged to follow orders prescribed by the patient’s attending physician, but the attending physician did not di *172 rectly supervise Dr. Blejan-Schram’s execution of those orders. In contrast, Dr. Nelson was subject to substantially more comprehensive control by the private hospital in which he treated Peter Trainor. See supra.