## DILLAHA FRUIT CO. and MILLER'S
## INSURANCE CO. OF TEXAS *v.*
## John LaTOURRETTE

77-196                                   557 S.W. 2d 397

### Opinion delivered November 14, 1977
### (Division I)

*Ralph R. Wilson,* for appellants.

*Lady, Webb & Blackman,* by: *Frank Lady,* for appellee.

ELSIJANE T. ROY, Justice. In this action the Arkansas Workmen's Compensation Commission found appellant, Dillaha Fruit Company, liable *to* appellee, John LaTourrette, for compensation benefits as a result of injuries sustained by appellee in an accident on May 15, 1975. This appeal is brought from the Circuit Court's affirmance of that decision.

Appellee's specific contention, upheld by the court, was that he was jointly employed by Dillaha and Jessie Lanier. For reversal Appellant Dillaha contends there is no substantial evidence to support the determination that appellee was an employee of Dillaha Fruit Company at the time of the accident.

Appellee commenced employment for Dillaha on January 17, 1974, as a truck driver delivering produce locally to designated stores. In July or August, 1974, appellee, as part of his regular employment began making deliveries, or runs, to Crossett. He was taught the route by a former Dillaha employee.

Shortly thereafter Ted Dillaha, president of the appellant produce company, and Jessie Lanier approached appellee concerning his making the Crossett run in a delivery truck owned by Lanier on a regular basis for $30 per trip. LaTourrette agreed to accept this employment on a temporary basis and thereafter began delivering produce on the Crossett run for both Dillaha and Lanier under the separate invoices of each. The runs in the Lanier truck were made on Tuesdays and Thursdays, while appellee worked the rest of the week, except Sunday, exclusively for Dillaha, a period in excess of 40 hours per week.

As to the Crossett run after appellee's employment by both Dillaha and Lanier, the Commission found, and the record substantiated its finding, that:

> . . . Mr. Dillaha continued to give the claimant limited instructions concerning the run; that the Jessie Lanier truck remained at the Dillaha warehouse where it was loaded in the morning and where it was left in the evening; that the claimant continued to make adjustments for damaged goods under either the Lanier or Dillaha invoices as authorized by Ted Dillaha, Jr.; and that the customers serviced and the route taken were the same as when the claimant was driving the Dillaha truck and clocking his time with Dillaha Fruit Company.

On the day of the accident appellee left on the Crossett

run at approximately 2:30 a.m., stopping first in Warren. There he made deliveries to four different stores, two of which were under the Lanier invoice and two under the Dillaha invoice. He left Warren at approximately 5:30 or 6:00 a.m., and while he was en route to Crossett his truck ran off the shoulder of the road and overturned. Appellee testified at the hearing that he did not know how the accident happened. As a result of the accident appellee sustained injuries which caused him to be paralyzed from the chest down, leaving him with no control over his kidney or bladder functions. At the hearing before the Commission appellee was restricted to a wheelchair.

As to the relationship between Lanier and the Dillaha Company, the Commission found that they had worked together prior to 1974 with Lanier purchasing his fruits and vegetables from various companies including Dillaha. Lanier then peddled his produce by himself independently. While Lanier was hospitalized for surgery the Dillaha Company continued to supply his customers with produce. After Lanier's recovery he was unable to continue his previous working arrangement and began to contact his customers by using the telephone at the Dillaha warehouse. Also, Lanier's orders were thenceforth filled exclusively with Dillaha produce.

During the time appellee was making the Crossett run he collected payments under both the Lanier and Dillaha invoices. The money collected was commingled and placed in the Dillaha Company vault. The invoices were then processed by Dillaha employees who charged Lanier for the produce delivered to his customers and credited his account for amounts received on his invoices. Appellee took the $30 wages to which he was entitled out of money he collected each day on the Crossett runs. This sum was charged against the Lanier account.

In addition to recovery of benefits for his injuries appellee sought imposition of the 15% statutory penalty for violation of safety regulations pursuant to Ark. Stat. Ann. § 81-1310(d) (Repl. 1976). Appellee claimed that a federal regulation which set the maximum number of hours a driver

can be on duty during a specified period of time had been violated. It was undisputed that Jessie Lanier did not carry workmen's compensation insurance.

The Commission found that the claimant was jointly employed by Lanier and the Dillaha Company; that he had suffered a compensable injury while in this joint employment; that he earned sufficient wages as an employee of Dillaha to entitle him to the maximum compensation amount of $66.50 per week; that he had suffered temporary and total disability; and that Dillaha was liable for all reasonable hospital and medical expenses incurred by the claimant. Since appellee testified he did not know how the accident happened, the Commission found no evidence that violation of a safety regulation contributed to the claimant's accident and denied that claim summarily. The award of the Commission was entered accordingly and affirmed by the circuit court.

In 99 C.J.S., Workmen's Compensation, § 46 (1958), the following is stated regarding simultaneous employers of the same employee:

> The relation of employer and employee may be simultaneously sustained between several employers and the same employee. Where this situation exists, the employers have, in several cases, been held jointly liable for compensation to an employee injured while on the property of, or doing work for, one of them, at least where there was a joint hiring or a joint employment, or where the employee was injured while performing a duty for the common benefit of all the employers, as where he was traveling from one employer's place of business to that of the other, as he was required to do in order to perform properly his duties for both, or where he was on his way to demonstrate or sell products of both employers, first the products of one at one city, then the products of the other at another city, or where he was returning from points where he had been instructed to go by both employers.

Further support for finding joint liability against

simultaneous employers is found in 1A Larson's Workmen's Compensation Law, § 48.40 at p. 8-254 (1973):

> * * * Courts are showing an increasing tendency, however, to dispose of close cases, not by insisting on an all-or-nothing choice between two employers both bearing a close relation to the employee, but by finding a joint employment on the theory that the employee is continuously serving both employers under the control of both.

The same section also states where such joint employment occurs "both employers are liable for workmen's compensation." Larson's, *supra,* p. 8-253.

In reviewing an award of workmen's compensation benefits we must view the evidence in the light most favorable to the Commission's actions. We do not determine whether the testimony would have supported a contrary finding but rather whether the evidence supports the finding made. *Reynolds Mining Co.* v. *Raper,* 245 Ark. 749, 434 S.W. 2d 304 (1968).

We find there is substantial evidence to support the award made and also the refusal to impose a penalty.

Affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HICKMAN, JJ.