Fecteau, Francis R., J.

Introduction

This is a medical malpractice action involving Robert Brown, D.O. (“Brown” or “defendant”), a resident physician (“Resident”) at UMass Memorial Medical Center (“UMMC”).
The events giving rise to this litigation took place at the UMMC Emergency Room on October 27, 1998. Oneil Martinez (“Martinez” or “plaintiff’) initially brought suit against the Commonwealth of Massachusetts and John Doe, M.D., but amended the complaint to include Brown and Dijby Diop, M.D. (“Diop” or “defendant”) following discovery on June 12, 2002.[2]
Brown now moves for summary judgment (and entry of separate and final judgment), on the ground that, on October 27, 1998, he was a public employee of the Commonwealth of Massachusetts, and as such, is immune from liability for acts performed within the scope of his public employment pursuant to G.L.c. 258, §2. The Plaintiff opposes the defendant’s motion and contends that summary judgment is inappropriate because there is a genuine issue of fact as to whether Brown was a public employee at the time of the alleged malpractice. The parties were heard in argument on this motion on April 5, 2006.

Background

The facts, either undisputed or taken in the light most favorable to the plaintiffs, are as follows. Martinez was treated by Brown and Diop in the UMMC Emergency Room in Worcester on October 27, 1998. Martinez was apparently brought to the Emergency Room after complaining of chest pain and difficulty *104 inhaling. Following an examination, Martinez was given a prescription for pain medication and discharged. One week later Martinez’ sister found him, unconscious in his bathtub and summoned an ambulance. He was once again brought to UMMC, where he was admitted and diagnosed with acute kidney failure. Martinez has since undergone kidney dialysis, as well as an unsuccessful kidney transplant. In his amended complaint, he claims that his injuries are the result of substandard or negligent medical treatment that he received during his initial visit to the UMMC Emergency Room on October 27, 1998. In particular, he asserts that defendants Brown and Diop failed to properly examine or diagnose him and as a result, he suffered further injuries and hospitalizations.
The Universiiy of Massachusetts (“the University”) operates the University of Massachusetts School of Medicine (“the Medical School”), which is an agency of the Commonwealth. The University also operated UMass Medical Center as a state facility until April 1, 1998, when UMass Medical Center merged with Memorial Health Care, a private nonprofit corporation. The merger resulted in two new private non-profit corporations, UMass Memorial Health Care, Inc. and UMMC. At the time of the events giving rise to this litigation, Brown was enrolled in the Medical School’s Residency Program and was a resident physician assigned to UMMC.
In furtherance of the merger, several documents were executed by UMass and Memorial Health Care on March 31, 1998, relevant to Brown’s employment status. Among these documents was an Academic Affiliation and Support Agreement (“the Affiliation Agreement”), part of which defined the relationship between the Medical School and UMMC. According to §2.2.1 of the Affiliation Agreement, “(t]he Medical School shall control decisions regarding academic issues and medical education and training, including, but not limited to, continuing medical education programs of the parties and rotations and assignments regarding graduate and undergraduate students.” In addition, pursuant to §2.2.2, all patients at UMMC “shall, at all times, be under the supervision and responsibility of an attending physician privileged by the . . . hospital,” and patients may not be treated solely by Residents or students. Under §2.2.5, “only medical staff members at the Hospital Affiliates with Medical School faculty appointments shall participate in the training of medical residents[.]” The Affiliation Agreement also provides that Residents will remain subject to the policies and procedures of the Medical School while on assignment at UMMC, but they must also abide by all the rules and regulations of the hospital to which they are assigned. Affiliation Agreement §2.2.5.
Concurrently with the Affiliation Agreement, the parties also signed the Graduate Medical Agreement (“GME”), which pertains in part to the training and supervision of Residents at UMMC. In the GME, the parties explicitly state that “Residents are acting as and shall remain employees of the University and shall not, at any time, be considered agents or employees of the Medical Center or its Hospitals while performing services under this Agreement.” GME, Part II, A. Furthermore, “(t]he University shall establish the faculty supervision, work hour and work environment standards for the Residents, in consultation with the Medical Center. The University . . . shall retain ultimate responsibility for the Resident.” Id. at Part II, E. However, according to the GME, UMMC provides immediate direct supervision of Residents, and the Residents, in turn, report to the director of the division to which they are assigned at the hospital. Id. at Part II, G. The Residents also must comply with all applicable hospital policies, rules, regulations, and procedures when providing services at UMMC. Id.
The GME establishes that the Medical School will provide employee benefits for the Residents, including health and life insurance, dental insurance, retirement, workers’ compensation, and unemployment insurance. Id. at Part IV, B. The Residents may also purchase group long-term disability insurance through UMass. Id. In the GME, the Medical School also agrees to pay Residents’ malpractice insurance. Id. at Part IV, C. Residents’ vacation and sick time are to be governed by the University Resident Personnel Policies. Id. at Part IV, E. The summary judgment record reveals that at the time of the incident in question, Brown had enrolled in the Commonwealth’s contributory retirement plan, and received health, dental, and life insurance though the Commonwealth’s Group Insurance Commission. In addition, his salary was paid by the Commonwealth of Massachusetts and his employment contract was with the University.
The summary judgment record also reveals that Francis Renzi, M.D. (“Renzi”) was the Director of the Emergency Medicine Residency Program (“the Program”) of the Department of Emergency Medicine at the Medical School. Renzi was responsible for the administration of the Program and directed and controlled the administrative aspects of each Resident’s participation in the Program, including Brown’s. Renzi thus approved Brown’s work schedule, including his hours, rotations, and assignments. Brown was also required to seek Renzi’s permission for vacation time or personal leave. As Director of the Program, Renzi designed the Residents’ curriculum and conducted performance evaluations of the Residents. Renzi was responsible for assigning Brown to UMMC, which was a mandatory part of the Residency curriculum. While at UMMC, Residents, including Brown, did not have admitting privileges and had no discretion over which patients they treated.
On October 27, 1998, Brown was subject to the immediate supervision of Diop, the attending physi *105 cian at the time. Diop held an academic appointment at the Medical School and was regularly involved in the supervision of Residents at UMMC.

Discussion

I. Standard of Review

Summary judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Com. 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).

II. Brown’s Status as a Public Employee

Under the Massachusetts Tort Claims Act (“Act”) a public employer is liable for the negligent or wrongful act or omission of a public employee, if that employee is acting within the scope of his employment. G.L.c. 258, §2. Prior to the merger between UMass Medical Center and Memorial Health Care, there was no question that UMMC was a public employer and agency of the Commonwealth. However, following the merger, two private non-profit corporations emerged, complicating the issue of which physicians and Residents at UMMC should properly be considered public employees.
The fact that Brown, as a Resident, was employed by the Commonwealth, and that his employment contract is with the University, is not determinative on this point. See Smith v. Steinberg, 395 Mass. 666, 667-69 (1985). Nor was he a public employee simply because “a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule.” Williams v. Hartman, 413 Mass. 398, 400 (1992). Rather, the appropriate question is whether a public employer “directs and controls” the physician’s treatment of patients. Id.; Smith, 395 Mass. at 669. In order to determine whether Brown was a public employee, this Court employs the same standards that apply to cases involving a claim of vicarious liability against a principal for the acts of his agent. McNamara v. Honeyman, 406 Mass. 43, 48 (1989). There, as here, “the right to control an agent’s activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent’s principal.” Kelley v. Rossi, 395 Mass. 659, 661 (1985).
Generally speaking, physicians are not subject to the direction and control of others, and must exercise independent judgment and discretion in order to perform their jobs. Id. at 662. Residents, however, present a somewhat different situation in that they are subject to the supervision of attending physicians and do not exercise the same degree of individual discretion as physicians. Williams v. Bresnahan, 27 Mass.App.Ct. 191, 192-93 (1989). A Resident “has duties and obligations at a hospital that demonstrate that he or she is a servant.” Id. at 192. The general rule, therefore, is that a Resident is a servant of the hospital. Kelley, 395 Mass. at 663.
In this case, the question is whether, in light of the relevant principles of agency law, the undisputed material facts show that Brown was a servant of the Commonwealth or one of its agencies, to the exclusion of a private employer, at the time relevant to this cause of action. The defendant argues that the summary judgment record demonstrates that there is an absence of a triable fact as to Brown’s status as a public employee on the date in question. In particular, he claims that the provisions of the Affiliation and GME pertaining to Residents establish that all Residents were incontrovertibly under the exclusive direction and control of the Medical School, which is a state institution. Brown also points to the fact that he was enrolled in the Commonwealth contributory retirement plan, received health, dental, and life insurance benefits from the Commonwealth, and was paid a salary by the Commonwealth, as further evidence of his status as a public employee. The affidavits submitted by the defendant also purport to establish that at all relevant times Brown was under the direction, supervision, and control of Renzi.
The thrust of the plaintiffs argument in opposition to the defendant’s Motion involves the Commonwealth of Massachusetts’ motion to dismiss which was filed in January of 2002, prior to the addition of Brown or Diop as named defendants in this action. According to the Plaintiff, Brown should be bound by the statements made in that motion to the effect that UMMC is a private institution which is no longer a public employer. This argument fails in two respects. First, Brown should not be bound by statements made by the Commonwealth prior to his being named as a defendant. Given the fact that the Commonwealth was not aware of the identity of the John Doe defendants at the time when the motion to dismiss was filed, it could not have anticipated that a Resident, not a physician, would be involved in the suit. Clearly, the fact that Brown was a Resident presents a factual issue that would not have been relevant had he been a physician engaged in private practice. In light of this situation, it is not proper to bind Brown by statements made prior to his inclusion as a defendant in the case.
Secondly, it is not clear that even if the Commonwealth’s statements are deemed admitted *106 that the issue of Brown’s employment status would be resolved in favor of the plaintiff. At issue is whether Brown was, by virtue of his status as a Resident, subject to the supervision and control of the University, not the hospital. It is not true, as plaintiff suggests, that Brown cannot be a public employee if UMMC is not a public employer. The real question is whether the undisputed facts show that Brown was a servant of the Medical School, which is a public entiiy.
The plaintiff is correct, however, that the Affiliation Agreement and GME, while probative, do not establish on whose behalf Brown was acting while at UMMC. These documents set forth the relationship between the parties to the merger and do not conclusively establish the employment status of a Resident assigned to UMMC. For example, the GME states unequivocally that Residents are not to be considered agents or employees of the hospital, yet the hospital provides immediate, direct supervision of Residents while on assignment, and Residents are required to report to the director of the department to which they are assigned in the hospital. In addition, both the GME and the Affiliation Agreement state that although Residents remain subject to the policies and regulations of the Medical School while on assignment, they must also abide by the rules and procedures of the hospital to which they are assigned.
In his affidavit, Renzi repeatedly states that all Residents are under his control and supervision, but this control appears to extend only to administrative matters, such as scheduling, evaluations, and curriculum planning. The Residents are supervised at the hospital by an attending physician; in this case, Brown was supervised by Diop. Of course, the fact that Brown was “subject to supervision by the attending physician in addition to the public employer does not, by itself’ mean that he was not a public employee. Williams, 27 Mass.App.Ct. at 193. However, the defendants do not elaborate on the nature of Diop’s supervision over Brown, nor do they offer facts relevant to Diop’s own employment status. For example, it would be useful to know whether Diop treated patients in a private practice, and what his academic appointment entailed at the Medical School. This is understandable given the fact that Diop is also named as a defendant in this action, but it also presents a question of fact that should be resolved by the fact finder, not on a motion for summary judgment.
While the motion record contains many facts that tend to show that Brown was a servant of the University, there is also sufficient contradictory evidence which supports that Brown was also a servant of the hospital; caselaw does not necessarily exclude this possibility. Indeed, in the case of Williams v. Westover Finishing Co., Inc., 24 Mass.App.Ct. 58 (1987), the court stated:
[J]oint employment, where a person under the simultaneous control of two employers simultaneously performs services for both, is a well recognized phenomenon, as distinguished from dual employment, where an employee performs services for each of two employers separately and the services for the two employers are unrelated. See 1C Larson, Workmen’s Compensation §§48.41-48.42 (1986). The operations of the two companies were very closely integrated, and the line between them was not clear. In similarly dubious cases other courts have upheld findings that an employee was jointly employed by two employers at once. Dillaha Fruit Co. v. LaTourrette, 262 Ark. 434, 557 S.W.2d 397 (1977). Richard v. United States Fid. & Guar. Co., 247 La. 943, 175 So.2d 277 (1965). Del Peso v. H.A. Bar & Restaurant Co., 75 N.J.Super. 108, 182 A.2d 373 (App.Div. 1962). Larson, supra, notes that courts are showing an increasing tendency to recognize joint employment where it exists, instead of arbitrarily assigning the employee to one or the other employer, [at 60-61.)
Later, in the case of Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. 424 (2001), the court observed, given the issues involved in the case, that while it did not need to “explore the applicability of the frequently quoted maxim that ‘a man cannot serve two masters at the same time’ . . . based on the principle that an agent owes undivided loyally to the principal . . . , there is authoriiy that, regarding a master-servant relationship, a single act may be done to effect the purposes of two independent employers. See Restatement (Second) of Agency §226 (1958) (’A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other’).” At fn. 8. [Internal citation omitted.) Thus, it may be so in the case herein.
Therefore, given a motion record that is supportive of a determination that there exists a genuine dispute of material fact as to whether Brown, as a resident under the UMass Medical School Resident Program, was a servant of UMMC, now a private institution, while on assignment in the Emergency Room, summary judgment is not warranted. See Kelley, 395 Mass. at 665.

ORDER ON MOTION

For the foregoing reasons, the motion of the defendant Robert Brown, D.O., for Summary Judgment is DENIED.

 The plaintiff had already amended the complaint on February 19, 2002 to include UMMC rather than the Commonwealth of Massachusetts. Plaintiff acknowledges that UMMC is no longer a state institution due to a merger between UMass Medical Center and Memorial Health Care, Inc. (“Memorial Health Care”) on April 1, 1998.